# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 19, 2007

Charles R. Fulbruge III
Clerk

No. 07-20275
Summary Calendar

DON CARTER,

Plaintiff-Appellant,

v.

THOMAS RIDGE, Secretary of the Department of Homeland Security,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 04-CV-3919

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

This case arises under 5 U.S.C. §§ 7702 and 7703, which provide for judicial review in the federal courts of final determinations of the Merit Systems Protection Board ("MSPB") in cases involving allegations of discrimination. The district court granted summary judgment to the Department of Homeland Security ("the Agency") and dismissed Plaintiff Don Carter's ("Carter") claims of discrimination and retaliation. For the following reasons, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.    FACTUAL AND PROCEDURAL BACKGROUND

From 1987 until the time when he was removed, Carter served as a pilot for the United States Customs Service, now a division of the Agency. He was based at the Agency's Air and Marine Branch Office in Houston. In 1988, Carter was involved in a near fatal crash while flying a Cessna 320, a light piston driven aircraft. As a result of this crash, Carter experienced significant anxiety, unease, apprehension, and hesitation when flying piston driven airplanes. Carter flew only turbine driven airplanes from 1994-2001.

In 2000, the Agency assigned Carter to the Cessna 210, a light piston driven aircraft similar to the Cessna 320. Carter began experiencing anxiety while piloting this plane, and in January, 2001, Carter expressed his concerns to the aviation group supervisor. Carter's supervisor offered him additional training and referred Carter to the Employee Assistance Program ("EAP").

In October, 2001, Carter visited an independent physician and was diagnosed with post-traumatic stress disorder ("PTSD") stemming from the 1988 crash. Carter provided the Agency with a letter from his physician indicating the diagnosis of PTSD. In response, on November 30, 2001, the Agency transferred Carter to a non-flying position and referred him to a fitness for duty examination. The examination, conducted in December, 2002, concluded that Carter was psychologically fit to serve as a pilot and a law enforcement officer, but recommended that Carter not pilot light piston driven aircraft.

In March, 2002, after Carter was transferred to a non-flying position, he filed an administrative Equal Employment Opportunity ("EEO") complaint alleging discrimination based on a mental disability, namely PTSD. He also alleged reprisal for his participation as a witness in a co-worker's EEO hearing.[1]

---

[1] Carter testified on behalf of his co-worker on October 25, 2001. The co-worker's EEO case was successful and judgment was entered on her behalf in December, 2001.

Carter's job description requires that, according to the operational needs of the service, he pilot light to medium single or twin engine airplanes, including the Cessna 210 and 320. In June, 2003, the Agency notified Carter that because he was unable to fly two types of aircraft as specified in the position description, he was being given a directed reassigment. The Agency offered Carter two comparable non-pilot positions at the same pay, grade, and promotion track as his pilot position, but both jobs required Carter to relocate. Carter declined reassignment in July, 2003, and requested a hardship allowance to remain in Houston because of his son's medical problems. The hardship exemption was denied by the Agency. In January, 2004, the Agency removed Carter from federal service for failure to accept a directed reassignment.

After his termination, Carter voluntarily dismissed his EEO complaint in favor of filing an action before the MSPB. Before the MSPB, Carter contended that his removal was based on his PTSD and also in retaliation for his testimony at his co-worker's EEO hearing. Following a full hearing, and in a written opinion, the MSPB judge affirmed the removal action and rejected Carter's argument that the removal was the product of discrimination or retaliation.

Carter subsequently filed suit in the Southern District of Texas. Carter's federal complaint alleged that he was denied accommodations for his disability in violation of the Rehabilitation Act, 29 U.S.C. § 791; he had been retaliated against for his prior EEO activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; and he was terminated because of his disability and prior EEO activity in violation of the Rehabilitation Act and Title VII, respectively. The district court granted summary judgment to the Agency on all of Carter's claims. The district court found that: (1) Carter's Rehabilitation Act claims failed because Carter is not an individual with a disability within the meaning of the Rehabilitation Act; (2) Carter's retaliation

claim fails because he did not show that the Agency's articulated legitimate reason for terminating him was pretextual; and (3) Carter's claims of associational discrimination and pre-removal retaliation are unexhausted and therefore unreviewable. Carter timely appealed.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record discloses that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This court reviews de novo a district court's grant of summary judgment, applying the same legal standards as the district court. Allstate Ins. Co. v. Disability Servs. of the Sw. Inc., 400 F.3d 260, 262-63 (5th Cir. 2005).

## III. ANALYSIS

### 1. Rehabilitation Act Claim

Carter alleges that he was discriminated against because of his PTSD in violation of the Rehabilitation Act, 29 U.S.C. § 794(d). The Rehabilitation Act is the exclusive remedy for federal employees claiming disability discrimination. To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must prove (1) he is an "individual with a disability;" (2) who is "otherwise qualified" for the position sought; (3) who worked for a "program or activity receiving Federal financial assistance;" and (4) that he was discriminated against "solely by reason of her or his disability." Hileman v. City of Dallas, Tex., 115 F.3d 352, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 794(a)). The Rehabilitation Act adopts the standards applied under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, et seq., to determine whether there has been a violation. 29 U.S.C. § 794(d).

In granting summary judgment to the Agency, the district court determined that Carter was not an individual with a disability under the

Rehabilitation Act. The ADA defines "disability" as, inter alia, "a physical or mental impairment that substantially limits one or more of [a person's] major life activities." 42 U.S.C. § 1202(2)(A). In order to show an impairment that "substantially limits a major life activity," the plaintiff "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002). Major life activities may include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3. Carter argues that he is an individual with a disability because his PTSD substantially limits his major life activities of working and sleeping.

First, the district court correctly concluded that Carter did not raise a genuine issue of material fact as to whether his PTSD substantially limits his ability to work. A physical or mental impairment that only affects the claimant's ability to engage in a narrow range of jobs or a particular job alone "does not substantially limit one or more major life activities." Hileman, 115 F.3d at 353; see also Sutton v. United Air Lines, 527 U.S. 471, 492 (1999) ("To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice."). Instead, "the impairment must substantially limit employment generally." Id. at 354. Carter alleges that his PTSD only limits his ability to pilot single engine piston driven aircraft and that he remains fully capable of flying other types of aircraft. It is not enough for Carter to present evidence that he can no longer pilot single engine piston driven aircraft; he must show that he is "significantly restricted in ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). Carter's own argument, acknowledging that he is able to pilot other types of aircraft, indicates that he has not met this standard. He has not established that his medical

condition bars him from working in all jobs within the aviation field or from holding a large number of jobs in other categories of employment. See, e.g., Sutton, 527 U.S. at 492 (finding that pilot is not substantially limited in the major life activity of work if other positions besides global airline pilot, such as regional pilot, co-pilot, or courier pilot, are available).

Carter also argues that his PTSD substantially limits the major life activity of sleep. The Fifth Circuit has not yet considered whether sleeping constitutes a major life activity.[2] However, even assuming, arguendo, that it is, Carter fails to raise a genuine issue of material fact as to whether his impairment substantially limits his ability to sleep. An impairment substantially limits a major life activity if it makes an individual completely unable to perform the activity or if it "significantly restricts the duration, manner, or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity." 29 C.F.R. § 1630. Applying these guidelines to sleeping, the Eleventh Circuit has said: "[d]ifficulty sleeping is extremely widespread, and plaintiff must present evidence, beyond vague assertions of a rough night's sleep or a need for medication, that his affliction is worse than that suffered by a large portion of the nation's adult population." Nadler v. Harvey, No. 06-12692, 2007 U.S. App. LEXIS 20272, at *18-19 (11th Cir. August 27, 2007). "Someone who sleeps moderately below average is not disabled under the Act." Id. at *19. Carter points to his physician's testimony

---

[2] Several of our sister circuits have determined that sleeping is a major life activity. See Nadler v. Harvey, No. 06-12692, 2007 U.S. App. LEXIS 20272, at * (11th Cir. August 27, 2007); Burks v. Wisconsin Dep't of Transp., 464 F.3d 744, 755 (7th Cir. 2006); Nuzum v. Ozark Auto. Distribs., 432 F.3d 839, 848 (8th Cir. 2005); Boerst v. Gen. Mills Operations, Inc., 25 Fed. Appx. 403 (6th Cir., 2002); EEOC v. Sara Lee Corp., 237 F.3d 349 (4th Cir. 2001); Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir. 1999); McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999); Colwell v. Suffolk County Police Dep't, 158 F.3d 635 (2d Cir. 1998).

before the MSPB that Carter was experiencing some sleep disturbance which was making him tired, fatigued, and uncomfortable. His physician also testified that "sleep disturbance" means less than normal sleep and that he believed Carter was getting less than five hours of sleep per night. This evidence establishes that Carter's sleep was limited by his PTSD, but it did not establish that he was substantially impaired in the major life activity of sleeping. See, e.g., Nuzum v. Ozark Auto. Distribs., 432 F.3d 839, 848 (8th Cir. 2005) (finding that sleeping two and half hours at a time and five hours a night is not substantially impaired); Swanson v. Univ. of Cincinnati, 268 F.3d 307, 316 (6th Cir. 2001) ("While less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population.").[3] Thus, the district court correctly found that Carter had not presented sufficient evidence to raise a genuine issue of material fact as to whether his PTSD substantially limited his major life activity of sleeping.[4]

2.    Retaliation Claim

Carter claims that he was removed on January 30, 2004, in retaliation for his October 25, 2001, testimony in a co-worker's EEO case and for filing his own EEO complaint on March 15, 2002, alleging disability discrimination. The

---

[3] Carter further argues that he was substantially impaired in a major life activity because he would have been disqualified from serving in his position if he took the sleep medication prescribed to him. Carter is correct that if he were taking medication, the court must consider the effect of the medication when examining whether a person is substantially limited in a major life activity. See, e.g., Sutton, 527 U.S. at 482. Carter, however, presented no evidence that he was actually taking medication for his sleep impairment. Cf. Head v. Glacier Nw. Inc., 413 F.3d 1053, 1060 (9th Cir. 2005) (holding five to six hours of sleep are enough to raise a genuine issue of material fact when the plaintiff testified that he was drowsy at work due to medication and a lack of sleep).

[4] Carter also argues that he was disabled under the Rehabilitation Act because he was "regarded as" having a physical or mental impairment. 42 U.S.C. § 12102(2)(C). Carter's federal complaint does not allege a "regarded as" disabled claim. This claim was raised only in Carter's opposition to the Agency's motion for summary judgment, and thus was not properly before the district court. See Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 & n.3 (5th Cir. 1990).

Agency contends that Carter was removed because he refused directed reassignment.

We analyze a motion for summary judgment in Title VII retaliation claims using the McDonnell Douglas three-step, burden-shifting framework. Hockman v. Westward Commc'ns, L.L.C., 407 F.3d 317, 330 (5th Cir. 2004); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under this framework, Carter must establish a prima facie case for retaliation by presenting evidence that (1) he engaged in "protected activity," (2) he suffered an adverse employment action as a result of partaking in the protected activity, and (3) there was a "causal link" between the protected activity and the adverse employment action. Hockman, 407 F.3d at 330. The burden then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. Once such a reason is given, the plaintiff must in turn offer evidence to create a genuine issue of material fact that the defendant's reason is not true, but is instead a pretext for discrimination. Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005). In response to motions for summary judgment, it is "incumbent upon the non-moving party to present evidence – not just conjecture and speculation – that the defendant retaliated . . . against plaintiff." Grimes v. Tex. Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996).

The district court, without examining whether Carter had established a prima facie case of retaliation, granted summary judgment to the Agency on the basis that Carter had not shown that the Agency's articulated legitimate reason for terminating him was pretextual. We agree with the district court's conclusion. Even assuming that Carter has established a prima facie case, he has failed to create a genuine issue of material fact as to whether the Agency's reason for the removal is not true, but is instead a pretext for discrimination.

The Agency proffered a legitimate, non-discriminatory reason for removing Carter – failure to accept a directed reassignment. There is no dispute that under Carter's Mobility Agreement that the Agency had the authority to reassign Carter to another geographic location, nor is it disputed that Carter refused to accept the directed reassignment. Carter argues that he has established pretext by showing that other pilots were treated more favorably because other pilots were permitted to fly only one type of aircraft and he was not. It is true that a plaintiff may establish pretext by demonstrating that, under similar circumstances, other employees who had not engaged in protected activity were treated differently. See, e.g., McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007). However, the Agency does not assert that Carter was removed because he was unable to fly two types of aircraft; they claim he was removed because of his refusal to accept the directed reassignment. Therefore, to show pretext here based on dissimilar treatment, Carter would have to show that other employees who had refused a directed reassignment were not terminated. Carter's argument – that other pilots were permitted to fly only one type of plane and he was not – would only be relevant to a claim that the underlying directed reassignment based on his inability to fly two planes was retaliatory.[5] He has presented no evidence that the Agency's reason for the removal itself was retaliatory. The district court's grant of summary judgment was proper.

3. Pre-Removal Retaliation Claims and Associational Retaliation Claim

Carter's federal complaint alleges two additional retaliation claims. First, he claims that the Agency took a number of retaliatory actions against Carter

---

[5] However, as explained below, Carter failed to exhaust any claims relating to pre-removal retaliatory actions.

prior to his removal because of his protected EEO activity.[6]  Second, he alleges that his removal was undertaken in retaliation for his association with a disabled person, his son, under the Rehabilitation Act.  See 42 U.S.C. § 12112(b)(4).  Before bringing suit under Title VII and the Rehabilitation Act, an aggrieved federal employee must exhaust the available administrative remedies.  See 42 U.S.C. § 2000e-16(c); Fitzgerald v. Sec 32, U.S. Dep't of Veterans Affairs, 121 F.3d 203, 206 (5th Cir. 1997).  The district court found that Carter failed to exhaust his administrative remedies with respect to both of these two claims. We agree.

To exhaust his pre-removal claims of retaliation for his protected EEO activity, Carter was required to file an EEO complaint and otherwise exhaust his administrative remedies pursuant to Title VII.  Sloan v. Office of Personnel Management, 140 F.3d 1255, 1260 (9th Cir. 1998).  Although Carter filed an EEO claim regarding his pre-removal claims of retaliation, he failed to exhaust his administrative remedies with respect to that complaint because he requested the EEO voluntarily dismiss his complaint.  Rivera v. U.S. Postal Serv., 830 F.2d 1037, 1039 (1987) ("To withdraw is to abandon one's claim, to fail to exhaust one's administrative remedies."); 42 U.S.C. § 2000e-16(c) (permitting federal employee alleging discrimination to file suit in federal district court within 90 days of receipt of final agency action or after 180 days if the agency has not taken action on a complaint). Carter indicated that he requested dismissal of his EEO claim because he intended to pursue his claims before the MSPB. However, this was improper, as the MSPB lacked jurisdiction to consider Carter's pre-removal retaliation claims.  The MSPB only has pendent

---

[6] Carter alleges the following pre-termination retaliatory actions: grounding Carter from flying; assigning Carter to "desk duties" for two years; not permitting Carter to have a flight physical; not permitting Carter to attend a retirement seminar; and changing Carter's shift.

jurisdiction over discrimination and retaliation claims brought in connection with one of the five "adverse actions" otherwise appealable to it: a removal, a suspension for more than 14 days, a reduction in grade, a reduction in pay, or a furlough of 30 days or less. See Sloan, 140 F.3d at 1260; 5 U.S.C. § 7512(1)-(5). Carter has not demonstrated that his pre-removal retaliation claims are connected to any of the five adverse employment actions providing the MSPB with jurisdiction, and in fact, he did not even raise these claims before the MSPB. As such, Carter failed to exhaust his administrative remedies with respect to his pre-removal retaliation claims, and the district court's dismissal of this claim was not in error. See Ikossi v. England, 406 F. Supp. 2d 23, 28 (D.D.C. 2005) (holding that to exhaust pre-removal discrimination claims plaintiff must appeal the dismissal of an EEO complaint; the MSPB lacks jurisdiction to consider such claims).[7]

Carter's federal complaint also asserts that his removal was a form of retaliation against him for his association with a disabled person in violation of the Rehabilitation Act. See 42 U.S.C. § 12112(b)(4) (prohibiting discrimination against an individual because of the known disability of a person with whom the individual is known to have a relationship or an association). Because this claim involved one of the five adverse actions appealable to the MSPB–removal–this claim could have been exhausted either through the administrative remedies under Title VII or presentment of the claim to the MSPB. Sloan, 140 F.3d at 1258. Carter argues that his EEO complaint was sufficient to satisfy the exhaustion requirement. However, as noted above, Carter requested dismissal of the EEO complaint and thus, did not exhaust his remedies in this manner. See Rivera, 830 F.2d 1037 at 1039. In addition, Carter failed to present this

---

[7] To the extent that Carter's complaint alleges that he was retaliated against prior to removal because he opposed an act or practice made unlawful by the Rehabilitation Act, see 29 U.S.C. § 794 (incorporating retaliation provisions of the ADA), this claim is unexhausted for the same reasons as his Title VII pre-removal retaliation claims.

claim to the MSPB, and therefore did not exhaust his remedies through that forum. See McAdams v. Reno, 64 F.3d 1137, 1141-42 (8th Cir. 1995) (holding that a federal employee who elects to file an appeal with the MSPB cannot assert in federal court discrimination claims that were abandoned before the MSPB). The district court's dismissal of this claim was proper.

IV.   CONCLUSION

Based on the above reasons, we AFFIRM the district court's grant of summary judgment to the Agency.