

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00033-CV

Frederick **BEEBE**,
Appellant

v.

**CITY OF SAN ANTONIO**, by and through its agent, CPS Energy,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CI19603
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
    Patricia O. Alvarez, Justice
    Beth Watkins, Justice

Delivered and Filed: June 14, 2023

AFFIRMED

This appeal deals with a plea to the jurisdiction. Frederick Beebe sued his former employer, CPS Energy, alleging discrimination based on race and disability, retaliation for reporting discriminatory treatment, and harassment based on national origin and disability. The trial court granted CPS Energy's plea to the jurisdiction. Beebe contends that the trial court erred in granting the plea to the jurisdiction because (1) Beebe presented sufficient evidence on his discrimination and retaliation claims to satisfy a prima facie case, (2) a fact issue existed as to the elements that CPS Energy contested, and (3) his claims are not barred as a matter of law.

## BACKGROUND

CPS Energy is a municipally owned electric and natural gas utility serving Bexar County. CPS Energy hired Beebe in 1998. Beebe held various positions before being promoted to the executive level in Customer Engagement as an Executive Account Manager (EAM) in March 2017.

In June 2018, Karma Nilsson, a longtime colleague and former supervisor of Beebe, was promoted to EAM Director. This promotion placed Nilsson in a supervisory position over Beebe. After learning of Nilsson's promotion, Beebe expressed his concern to Nilsson's supervisors, Felecia Etheridge, the Chief Customer Engagement Officer, Lisa Lewis, the Vice-President of People and Culture Department, and Maria Garcia, the Vice President of Community and Key Accounts Engagement. Beebe's concern was that when Nilsson held a supervisory position over him seventeen years earlier, Beebe had filed an internal complaint against Nilsson for potential racial discrimination. He believed this previous conflict would continue to be a problem. According to Beebe, all three supervisors stated they appreciated his concerns and would "keep an eye" on the situation. No change was made; Nilsson was promoted, and Beebe remained an EAM under her supervision.

In September of 2018, Lewis decided to attend Beebe's mid-year performance review with Nilsson, in part due to Beebe's concern that he was being unfairly discriminated against. During that meeting, Nilsson advised Beebe of her concern with his communication and project management skills. Beebe stated he believed he was being treated unfairly either due to his race or because of the racial discrimination complaint he made against Nilsson in 2001.

After this meeting, Lewis followed CPS Energy's practice for harassment complaints at the executive level; she retained a third-party investigator, Sarah Sarahan of DeDe Church & Associates, to investigate Beebe's complaint.

Sarahan conducted her investigation by interviewing Beebe and other employees about Beebe's allegation that Nilsson was treating him differently either due to his race or because of his previous complaint against her. Most of the employees interviewed did not report harsh treatment of Beebe. One colleague, Ricardo Renteria, observed that Nilsson "roast[ed] Mr. Beebe quite a bit on his writing in front of everyone," but that he believed that this was due to Beebe's writing ability and not due to racial discrimination. Renteria reported being "in the same boat" as Beebe regarding his writing ability, but that he asked others to edit his work before submitting it to Nilsson to avoid the type of criticism that Beebe complained of. Sarahan concluded that Nilsson did not treat Beebe more harshly than his peers but rather showed frustration at Beebe's well-documented performance issues.

In October 2018, Ramon Gonzalez, an employee in the EAM Department, reported to Kruse, his supervisor, that Beebe "had said inappropriate things to a female." Kruse forwarded the complaint to Nilsson, who in turn relayed it to Etheridge, and in turn notified Lewis. Lewis informed the Legal Department and, following CPS Energy's practice, that department retained Kelli Cubeta as a third-party investigator.

Cubeta interviewed several employees regarding sexual harassment allegations against Beebe. One employee told her that Beebe, while standing in front of a female employee's desk, began talking about French kissing. Another employee told Cubeta that Beebe boasted about his connections at CPS Energy, asked for her phone number, and contacted her several times until she stopped answering the phone. All three employees reported to Cubeta that Beebe had a tendency to brag to women about his position at CPS Energy and his close connection to its CEO. Cubeta's report concluded that Beebe's behavior was chronic and inappropriate. Based on Cubeta's report, Lewis and Etheridge terminated Beebe's employment.

In September 2019, Beebe sued CPS Energy for employment discrimination. He included his allegations of racial discrimination and retaliation. He also included a claim that he had been discriminated against and harassed due to his disability, which he identified as dyslexia. CPS Energy filed a plea to the jurisdiction, arguing that Beebe could not prove his prima facie case. CPS Energy argued that Beebe's termination was legitimate, not pretextual. After a period of discovery and a hearing, the trial court granted CPS Energy's plea to the jurisdiction. It also struck one of Beebe's exhibits as inadmissible hearsay. Beebe now appeals the trial court's ruling, arguing that he has raised a question of fact as to the pretextual nature of his firing. Specifically, Beebe contests the trial court's ruling regarding his retaliation claim and his race and disability discrimination claims as well as the trial court's exclusion of his exhibit.

## PLEA TO THE JURISDICTION—STANDARD OF REVIEW

A trial court's ruling on a plea to the jurisdiction is reviewed de novo. *City of Richland Hills v. Childress*, No. 02-20-00334-CV, 2021 WL 4205013, at *3 (Tex. App.—Fort Worth Sept. 16, 2021, pet. denied) (citing *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015)). Where, as here, the plea to the jurisdiction challenges the existence of jurisdictional facts, we review the parties' relevant evidence to determine whether it raises a jurisdictional fact question that would allow the case to move forward. *Id.* (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004)). Like in our review of summary judgments, "we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor." *Id.* (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009)). And where the trial court has discretion to not consider any post-judgment motion for reconsideration and the record does not reflect that it did consider any post-judgment motion, we limit our review to the "arguments and evidence presented prior to the summary-judgment

hearing." *PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 730 (Tex. App.—San Antonio 2014, pet. denied).

**PRELIMINARY MATTERS**

CPS Energy is a utility company with governmental immunity. *City of San Antonio v. Smith*, 562 S.W.3d 75, 80 (Tex. App.—San Antonio 2018, pet. denied) (quoting *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 450 n.1 (Tex. 2016)). CPS Energy acknowledges that Beebe may sue it for his employment discrimination and retaliation claims if he can establish the merits of his claim at the outset. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 638 (Tex. 2012). To that end, the parties agree that the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 784 (Tex. 2018). The *McDonnell Douglas* framework begins with the plaintiff's burden to establish his prima facie case. *See Remaley v. TA Operating LLC*, 561 S.W.3d 675, 679 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Therefore, we begin with Beebe's burden to establish a prima facie case for his allegations of retaliation and race and disability discrimination. *See id.*; *Garcia*, 372 S.W.3d at 634.

**STEP 1: PLAINTIFF'S BURDEN TO ESTABLISH A PRIMA FACIE CASE**

**A.      Parties' Arguments**

Beebe argues that he established his prima facie case for discrimination and retaliation by (1) citing unfair treatment at work, (2) establishing his race and disability, (3) demonstrating that he complained of the unfair treatment to his human resources department, and (4) that he was fired shortly after he complained in 2018. CPS Energy argues that Beebe's discrimination complaints are unsubstantiated and that he was not fired in retaliation for his complaint.

**B.  Law**

*1.  Discrimination Claim*

For a discrimination claim, a plaintiff must establish that he is "(1) a member of a protected class, (2) qualified for his position, (3) subject to an adverse employment action, and (4) treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class." *Harris Cnty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 196 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).  The similarly situated employees must be "comparable in all material respects." *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 435 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)).  The disparate treatment must occur in relation to the adverse employment action, i.e., not conflated with a hostile working environment.  *See Parker*, 484 S.W.3d at 196; *In re Parkland Health & Hosp. Sys. Litig.*, No. 05-17-00670-CV, 2018 WL 2473852, at *8 (Tex. App.—Dallas June 4, 2018, no pet.) (citing *Sw. Bell Tel., L.P. v. Edwards*, No. 05–09–00606–CV, 2011 WL 3672288, at *11–12 (Tex. App.—Dallas, Aug. 23, 2011, no pet.) (mem. op.)); *see also Montgomery v. Valerus Compression Servs., LP*, No. 01-10-00716-CV, 2011 WL 3240829, at *6 (Tex. App.—Houston [1st Dist.] July 28, 2011, pet. denied) (citing *Page v. Fort Bend Indep. Sch. Dist.*, No. 01-02-00675-CV, 2002 WL 31771439, at *3 (Tex. App.—Houston [1st Dist.] Dec. 12, 2002, no pet.)) (concluding that plaintiff's beliefs that employer was hostile were not sufficient to raise a fact issue as to plaintiff's termination for violating employer's absence policy).

*2. Retaliation Claim*

When a plaintiff makes accusations of retaliation, he is required to establish that (1) he engaged in an activity protected by the TCHRA,[1] (2) he experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 495 (Tex. App.—Amarillo 2009, pet. denied) (citing *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 540 (5th Cir. 1998)).

"An employee engages in protected activity by, among other things, filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination with the EEOC." *Democratic Sch. Research, Inc. v. Rock*, 608 S.W.3d 290, 312 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing TEX. LAB. CODE ANN. § 21.055). "When an employee files an internal complaint or opposes a discriminatory practice, the employee's complaint must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id.* (citing *Clark*, 544 S.W.3d at 786).

To establish a causal link in a prima facie case for retaliation, a plaintiff can simply prove "close timing between the protected activity and the adverse action." *Clark*, 544 S.W.3d at 782 (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). The burden to establish this prima facie element is not considered onerous. *See id.*

**C.     Analysis**

The broad stroke version of Beebe's prima facie case for retaliation is that CPS Energy fired him after twenty years of service only ten weeks after he lodged a racial discrimination complaint against his supervisor, Karma Nilsson. His discrimination complaint is based on his

---

[1] Texas Commission on Human Rights Act

belief that Nilsson acted with discriminatory intent in singling him out, relaying a sexual harassment complaint against him to her supervisors, and then convincing them to fire Beebe, who is a Black man with dyslexia.

### 1. Discrimination

Regarding the elements of his discrimination claim, Beebe has established his membership in one protected class by asserting his Black race. *See Parker*, 484 S.W.3d at 196. As to Beebe's protected class status regarding his dyslexia, Beebe has asserted it, and CPS Energy has not disputed it.[2] Beebe has established his job qualification by citing his twenty years of service at CPS Energy. *See id.* For the adverse employment action, Beebe has identified his termination. *See id.*; *Ptomey*, 277 S.W.3d at 495. But as to his allegation of disparate treatment in being fired from CPS Energy, Beebe fails to show an example of a similarly situated coworker not being similarly fired for sexual harassment. *See Parker*, 484 S.W.3d at 196. Instead, Beebe cites *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015), a retaliation case, to support his claim that his supervisor, Karma Nilsson, had discriminatory intent and pushed her supervisor, Lisa Etheridge, and Lisa Lewis from human resources to fire him by reporting him for sexual harassment. Without evidence that Lewis and Etheridge, the decision-makers in Beebe's termination, applied CPS Energy's policy against sexual harassment unevenly in Beebe's termination, there is simply no evidence to support a claim that Beebe was treated less favorably than other CPS Energy employees in being fired for sexual harassment. *See Montgomery*, 2011 WL 3240829, at *6.

---

[2] Under the Texas Labor Code, "'[d]isability' means, with respect to an individual, a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LAB. CODE ANN. § 21.002(6); *accord City of Houston v. Proler*, 437 S.W.3d 529, 533 (Tex. 2014). If disputed, the protected nature of a person's claimed disability may create a factual issue under the Texas Labor Code. *See Proler*, 437 S.W.3d at 533.

Beebe attempts to demonstrate a disparity by pointing to his colleague, Clayton Kruse, as an example of a coworker who made racially or sexually insensitive jokes in front of Nilsson and him and was not reported or fired. But he does not point to any statement that Lewis and Etheridge received or disregarded any reports about Kruse. *See id.* Beebe also states that Nilsson had several conversations with Lewis and Etheridge about him leading up to his termination, but he does not point to anywhere in the record that would indicate these conversations were discriminatory. In fact, the record reflects that Nilsson did not talk to Etheridge or Lewis about firing Beebe. Beebe generally points to examples of Nilsson being more critical and severe with him than his coworkers, evidently to show her discriminatory intent, but he fails to show how these instances played a factor in his termination. *See id.* On this record, Beebe's allegations of discriminatory treatment by Nilsson do not raise a fact issue as to Etheridge's and Lewis's decision to terminate Beebe for sexual harassment.

### 2. Retaliation

First, CPS Energy disputes that Beebe engaged in protected activity, arguing that his belief that he was discriminated against was unreasonable. *See Rock*, 608 S.W.3d at 312. But noting that Beebe lodged an internal complaint against Nilsson in September 2018 (that resulted in a formal investigation) and considering that Beebe is permitted to cite circumstantial evidence, we conclude that he satisfied the protected activity element of his prima facie retaliation case. *See id.*; *Clark*, 544 S.W.3d at 764, 782 (noting that "smoking guns are hard to come by"); *see also Heinrich*, 284 S.W.3d at 378 (taking as true all evidence favorable to the non-movant, indulging every reasonable inference, and resolving any doubts in the non-movant's favor).

Next, as to the causal link between Beebe's termination and his protected activity, Beebe points to the short time between his 2018 complaint against Nilsson and his firing. *See Clark*, 544

S.W.3d at 782. As stated above, this showing is sufficient to satisfy the prima facie standard for causation. *See id*.

Because we have already addressed the elements of a protected class and adverse employment action, we move now to CPS Energy's explanation for Beebe's termination. *See Garcia*, 372 S.W.3d at 634.

### STEP 2: IS CPS ENERGY'S REBUTTAL A REASONABLE EXPLANATION?

#### A. Parties' Arguments

As noted, CPS Energy asserts that it terminated Beebe's employment because he violated its policy against sexual harassment.

Beebe argues that CPS Energy's reason for terminating his employment is not a legitimate one, considering that it is unable to specifically identify any specific statement from him that constituted sexual harassment.

#### B. Law

Once the plaintiff has adequately laid out his prima facie case for discrimination and retaliation, he is entitled to a presumption of discrimination, which the employer must rebut with a legitimate, non-discriminatory explanation. *See id.* (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)) ("The prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'"); *accord Flores v. Tex. Dep't of Criminal Justice*, 634 S.W.3d 440, 451 (Tex. App.—El Paso 2021, no pet.); *Hudgens v. Univ. of Tex. MD Anderson Cancer Ctr.*, 615 S.W.3d 634, 641 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

#### C. Analysis

Beginning with the presumption of discrimination, we consider CPS Energy's reason for terminating Beebe's employment. *See Garcia*, 372 S.W.3d at 634. According to Lisa Lewis,

Beebe was fired for sexually harassing junior coworkers and lying about it. Felecia Etheridge summarized these factors as violating the company's sexual harassment policy. She explained that the sexual harassment complaint was referred to third-party investigator Kelli Cubeta whose report the company relied on in its decision to fire Beebe. We include an excerpt of Cubeta's report here for context:

> According to [one of the complainants], on or about October 4, 2018, Mr. Beebe was standing at [another junior employee's] desk area speaking to [her] about French kissing. [The first complainant] shares the same desk area as [the second complainant]. [The second complainant] was not responding to Mr. Beebe's comments about French kissing and Mr. Beebe then said to [the first complainant] that [she] likes to French kiss. [She] responded, "Calm down Brett" referring to the recent Brett Kavanaugh Supreme Court Justice confirmation hearings related to sexual harassment.
> …
> Based on the interviews, it is apparent that Mr. Beebe has acted inappropriately by directing comments of an intimate nature exclusively to women subordinate to Mr. Beebe's position. This inappropriate behavior does not appear to be isolated; instead, the behavior has occurred consistently for a significant period of time. Except for Mr. Beebe, all the interviewed employees are unequivocal that Mr. Beebe's behavior is chronic and inappropriate.
>
> In particular, [a third complainant (referred for an interview by the first complainant)] stated that Mr. Beebe approached her soon after she joined CPS Energy (approximately 18 months [before this investigation]). Mr. Beebe stated that he was "well connected" at CPS Energy and asked for her phone number. Mr. Beebe contacted [the third complainant] on several occasions until [she] stopped answering his phone calls. [She] stated she never wanted Mr. Beebe to contact her, but she felt obligated to provide her phone number and respond initially to his calls due to his position. [She] stated that no romantic relationship ever occurred between her and Mr. Beebe.
>
> Mr. Beebe denies any and all inappropriate behavior and specifically denied ever mentioning anything to [the second complainant] or [the first complainant] about French kissing. Mr. Beebe is adamant that (1) his behavior is always professional, (2) he has never dated anyone at CPS, and (3) his communications with employees at CPS have never been of a non-business nature.

> I found [the reporting key account manager], [the second complainant], [the first complainant], and [the third complainant] to all be credible. Each of these witnesses independently corroborated Mr. Beebe's behavior and were forthcoming and specific with examples of Mr. Beebe's behavior on multiple occasions over the years. All three of the females interviewed also described Mr. Beebe's tendency to brag to women about his position at CPS Energy and his close connection to the CPS Energy CEO. [The third complainant] also stated that Mr. Beebe approached her for her phone number and called her on multiple occasions asking her out, which she rejected.
>
> Conversely, Mr. Beebe's statements during his interview were overly emphatic and absolute about basic common facts. For example, he claims to have never during the course of his 20 years at CPS to have had any kind of conversation whatsoever with an employee that was not related to business (i.e., weather, sports, etc.). Mr. Beebe did not make eye contact during the interview and did not show any concern about the allegations made against him.

As mentioned in the report, Beebe denied having any non-work-related conversation with coworkers, including the alleged sexual harassment conversation. But the two junior employees' independent affirmations regarding the alleged sexual harassment conversation is some evidence that undermined Beebe's denial. Also, Lisa Lewis personally recollected having non-work-related conversations with Beebe and knew that his attestation regarding non-work-related conversations was false. Beebe's statement regarding never having non-work-related conversations at work was then interpreted as a refusal to cooperate with the sexual harassment investigation, which weighed against him in CPS Energy's decision.

We conclude that CPS Energy has stated a legitimate, non-discriminatory explanation for Beebe's termination. *See Hudgens*, 615 S.W.3d at 641. We move on to Beebe's argument that his termination was pretextual. *See Clark*, 544 S.W.3d at 790.

### STEP 3: WAS BEEBE'S TERMINATION PRETEXTUAL?

**A.     Parties' Arguments**

Beebe argues that he was fired in retaliation for complaining about his supervisor and alleging racial discrimination against her.

CPS Energy argues that Beebe's racial discrimination complaints were not the cause of his termination from employment.

**B.     Law**

"[O]nce an employer produces a legitimate, nondiscriminatory explanation for its decision, an employee "must be afforded 'the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.'" *Univ. of Tex. Sw. Med. Ctr. v. Vitetta*, No. 05-19-00105-CV, 2020 WL 5757393, at *19 (Tex. App.—Dallas Sept. 28, 2020, no pet.) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)); *accord Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "Along with prima facie proof, disbelief of the reason put forward by the employer may 'suffice to show intentional discrimination.'" *Vitetta*, 2020 WL 5757393, at *19 (quoting *Reeves*, 530 U.S. at 147). But if the employer terminates the employee based on reports from coworkers, then the employer's good faith belief that the coworkers' allegations are true can defeat an employee's pretext argument. *See Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 818–19 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993)).

Because of the possibility that several consequential workplace reports can occur at once, intervening factors can break a causal link that could otherwise be inferred from temporal proximity. *See Sanders v. Sailormen, Inc.*, 506 Fed. Appx. 303, 304–05 (5th Cir. 2013); *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 523 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)

(concluding that "in light of intervening sexual harassment allegations, [the plaintiff] failed to raise a fact issue based upon temporal proximity.").

## C.    Analysis

Beebe complains that the sexual harassment allegation against him was not specific enough to be substantiated. He argues that CPS Energy unfairly relied on an accusation in the face of his denial. But Cubeta's third-party report on the allegation reflects that not only did several people substantiate the sexual harassment allegations, witnesses that included neither Nilsson nor Kruse, but that the investigator, Cubeta, did not find Beebe to be credible during their interview. *See Chandler*, 376 S.W.3d at 818–19.

On this record, Beebe has not shown that it was unreasonable for CPS Energy to rely on Cubeta's report in concluding that terminating Beebe's employment was the correct course of action for the company or that they did so pretextually. *See id*. This is so despite the closeness in time of Beebe's termination to his complaint against Nilsson. *See Sanders*, 506 Fed. Appx. at 304–05. There is a clear disconnect between Beebe's complaints and the investigation that led to his firing. *See id*. Beebe's substantiated violation of CPS Energy's sexual harassment policy created a legitimate ground for termination independent of his relationship to his supervisor, Karma Nilsson, and to his coworker, Clayton Kruse.[3] *See Chandler*, 376 S.W.3d at 818–19. While Beebe's argument may be that violating CPS Energy's sexual harassment policy is not the real reason for his firing, we conclude that it is some evidence of a legitimate reason for termination rather than pretext for discriminatory intent. *See id*. Beebe has not raised a question of fact or showed that his firing was pretextual. We overrule his first, third, and fourth issues on appeal.

---

[3] The parties briefed arguments regarding whether this court should adopt a "but for" or "motivating factor" analysis in deciding Beebe's discrimination complaint. Because we conclude that Beebe's argument fails under both, we do not address the distinction.

**HEARSAY**

**A.  Parties Arguments**

Beebe argues that the trial court improperly struck as hearsay an exhibit containing three pages of his typewritten notes and that CPS Energy failed to provide argument in support of its motion to strike.  CPS Energy argues that the trial court correctly struck the exhibit, and that if it improperly struck the notes, Beebe was not harmed by the exclusion.

**B.  Standard of Review**

Regarding a trial court's evidentiary rulings, we will only reverse if the trial court has abused its discretion.  *See Tex. Champps Americana, Inc. v. Comerica Bank*, 643 S.W.3d 738, 751 (Tex. App.—Dallas 2022, pet. denied) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)).  Otherwise, "[w]e must uphold the trial court's evidentiary ruling if it is correct under any legal theory." *Id*.

**C.  Law**

The rule against hearsay excludes as evidence any out-of-court statement made for the truth of the matter asserted unless it falls under an exception to the rule.  *See* TEX. R. EVID. 801, 802; *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007).

Beebe has argued that his notes should be considered admissible as a statement against interest. *See* TEX. R. EVID. 803(24).  A statement against interest is admissible as an exception to the hearsay rule when it meets the following standard:

> [A] reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace.

TEX. R. EVID. 803(24); *accord Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex. 1986). To the degree that the statement affects competing interests, its reliability must be weighed, and it must show trustworthiness in general. *See Robinson*, 711 S.W.2d at 621.

Beebe also argues that his notes should be admitted as non-hearsay under Rule 801(e)(2)(D), which provides that an opposing party's statement is not hearsay if it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." TEX. R. EVID. 801(e)(2)(D). Beebe cites *Norton v. Martin*, 703 S.W.2d 267, 272 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.), in support of his argument. In *Norton*, this court emphasized that the statement must "concern[] a matter within the scope of the employment." *See id*. We affirmed exclusion of a statement that someone had tripped over a wire, in part, because the proponent could not demonstrate that the statement concerned a matter within the scope of the declarant's employment.[4] *See id*.

Beebe also cites Rules 801(e)(2)(A) and (e)(2)(C), stating that it is clear they apply. 801(e)(2)(A) provides for the admission of a party opponent's statement if the statement "was made by the party in an individual or representative capacity." TEX. R. EVID. 801(e)(2)(A). Rule 801(e)(2)(C) provides for the admission of a party opponent's statement if the statement "was made by a person whom the party authorized to make a statement on the subject." TEX. R. EVID. 801(e)(2)(C).

But Beebe may not simply recite law. He carries the burden on appeal to construct an argument against the trial court's ruling to exclude his typewritten notes. *See* TEX. R. APP. P. 38.1(i) (requiring a clear argument); *Clifton v. Walters*, 308 S.W.3d 94, 99 (Tex. App.—Fort Worth 2010, pet. denied) (citing *Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d

---

[4] In fact, the biggest issue for the proponent in *Norton* was that the declarant was unknown. *See Norton v. Martin*, 703 S.W.2d 267, 272 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

279, 284 (Tex. 1994)) (requiring argument and analysis). If he does not provide an argument in support of his issue, then his issue may be struck for inadequate briefing. *See Clifton*, 308 S.W.3d at 99.

**D.    Analysis**

In his brief, Beebe merely asserts that the Rules of Evidence support his position without explaining how the trial court abused its discretion. *Contra* TEX. R. APP. P. 38.1(i). As noted in CPS Energy's responsive brief, Beebe's notes were "unauthenticated and unsworn" and "apparently made from previous notes Beebe had handwritten." On this record, it is unclear how the trial court abused its discretion in excluding Beebe's notes. Accordingly, we overrule Beebe's second issue.

## CONCLUSION

First, we conclude that Beebe failed to state a prima facie case for discrimination. He did not present any evidence to show that similarly situated employees were treated differently regarding violations of CPS Energy's policy against sexual harassment.

Next, we conclude that Beebe failed to show that his termination was pretextual, because the third-party investigation into sexual harassment allegations against Beebe provided a good-faith basis for CPS Energy to believe the claims were substantiated and actionable.

Lastly, Beebe failed to provide an argument as to how the trial court abused its discretion in striking his typewritten notes from consideration.

Accordingly, the trial court did not err in granting CPS Energy's plea to the jurisdiction and motion to strike. For these reasons, we affirm the trial court's order.

Patricia O. Alvarez, Justice