# Supreme Court of Texas

No. 24-0966

Texas Department of Public Safety,

*Petitioner*,

v.

Robert Christopher Callaway,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued January 15, 2026**

JUSTICE SULLIVAN delivered the opinion of the Court.

The Texas Department of Public Safety fired Chris Callaway, a former Texas Ranger who suffers from post-traumatic stress disorder, because of a terrifying incident at his daughter's high school. When counselors there threatened to detain his daughter to keep her safe, Callaway rushed to the school with his DPS badge, handcuffs, and gun. Confirming his own self-assessment after the fact—namely, that his PTSD sometimes "takes over" and yields "less than optimal outcomes"— Callaway menaced a pair of school counselors and threatened to arrest

the two police officers who arrived on the scene. DPS terminated Callaway after investigating the incident. Callaway sued DPS in response, urging a disability-discrimination claim under Chapter 21 of the Texas Labor Code. Because his claim fails as a matter of law, we reverse and render judgment for DPS.

**I**

DPS hired Callaway as a Trooper in 2004, promoted him to a Special Agent in its Criminal Investigations Division in 2010, and selected him as a Texas Ranger in 2012. It was a rough detail. Callaway took medical leave in 2017 to seek treatment for alcoholism and PTSD, and transferred back to the Criminal Investigations Division in 2018. He took additional medical leave in late 2019 to receive inpatient treatment for alcoholism and PTSD.

On January 15, 2020, while he was still out on medical leave, Callaway and his wife received a call from their daughter's high school. School counselors reported that the daughter might soon be detained due to a mental-health crisis. Grabbing his DPS badge, his handcuffs, and (because he was off duty) his personal sidearm, Callaway hurried to the high school with his wife and loudly confronted one of the counselors inside the small office where his daughter was being held. A second counselor joined them in the office upon hearing the ruckus, along with two officers from the school district's police department.

When the police officers advised that they would be transporting his daughter to a behavioral-health facility, Callaway ordered them to "get out of my office right now." Callaway also displayed his DPS badge

2

and threatened to prove "who has got a bigger set of handcuffs" by putting the police officers "in jail for interfering with [his] rights as a parent." When the counselor's office phone began to ring, Callaway yelled at her not to answer it. That counselor later reported that she "felt trapped and feared for [her] safety and [her] life" and had "never been so afraid." Eventually, Callaway and his wife allowed their daughter to travel to the behavioral-health facility with one of the police officers.

A few days later, the school district's police department sought to charge Callaway with abuse of official capacity (a Class A misdemeanor), official oppression (another Class A misdemeanor), and interference with public duties (a Class B misdemeanor). *See* Tex. Penal Code §§ 39.02, 39.03, 38.15. The district attorney later dropped those criminal charges.

During DPS's investigation of the incident at the high school, Callaway blamed his misconduct on the PTSD for which he'd sought treatment. His affidavit noted that, due to "repeated exposure to trauma and learned behavior by a brain," he "stay[s] in an elevated state of hypervigilance" and, "when it takes over, things often end with less than optimal outcomes." Callaway conceded that he "acted emotionally during the situation" at the high school, where he "reacted with fight or flight" and "chose to fight."

Colonel Steve McCraw, who was then the Director of DPS, ultimately decided to fire Callaway due to the high-school incident. As Director McCraw testified in a discharge appeal hearing before the Public Safety Commission of Texas:

3

[Callaway] was emotional. As a father of a daughter, I get that. We're all emotional and we're trying to protect our kids in that regard. And we're all very defensive in that regard.

But a DPS Officer has an obligation to control their emotions when they get there, plain and simple. And one thing you can't do, you can't walk into . . . an office and order a police officer out when he's trying to do his official job, plain and simple. . . .

[W]hen you have your badge displayed in that way, you're using your position as a DPS special agent to . . . interfere with the official response of police in another police agency, period. . . .

[W]e can't afford to have a trooper, a special agent, or Texas Ranger that can't control their emotions and someone seeking thrill or has to be driven by a thrill.

After DPS terminated his employment, Callaway sued the agency under Chapter 21 of the Texas Labor Code for disability discrimination and retaliation. The trial court denied DPS's joint plea to the jurisdiction, traditional motion for summary judgment, and no-evidence motion for summary judgment. On interlocutory appeal, the court of appeals "affirm[ed] the trial court's judgment with respect to Callaway's claim that his termination was motivated by discrimination based on his PTSD disability," but "render[ed] a judgment of dismissal for want of jurisdiction on the remainder of Callaway's claims." 722 S.W.3d 446, 475 (Tex. App.—Corpus Christi–Edinburg 2024). DPS filed a petition for review, which we granted.

## II

DPS didn't violate Chapter 21 of the Texas Labor Code when it fired Callaway. His state-law claim of disability discrimination invokes Section

21.051: "An employer commits an unlawful employment practice if because of . . . disability . . . the employer . . . discharges an individual . . . ." Tex. Lab. Code § 21.051(1). The plain text of Section 21.105, however, makes short work of the lone claim left in this case:

> A provision [like Section 21.051] referring to discrimination because of disability . . . applies only to discrimination because of . . . a physical or mental condition that *does not impair an individual's ability to reasonably perform a job.*

*Id.* § 21.105 (emphasis added).

The import of Section 21.105 is that, "if a claimant's disability (that is, a mental or physical impairment) in fact limits her ability to perform the job she has or seeks, Chapter 21 simply does not prevent the employer from terminating her or refusing to offer her the job 'because of' that impairment." *Tex. Tech Univ. Health Scis. Ctr.—El Paso v. Niehay*, 671 S.W.3d 929, 952 (Tex. 2023) (Boyd, J., dissenting); *accord Hilton v. Sw. Bell Tel. Co.*, 936 F.2d 823, 830 (5th Cir. 1991) (per curiam) ("Simply put, [Chapter 21] does not force employers to hire or retain a handicapped person who, because of his handicap, simply cannot perform a job."). That makes all the sense in the world, as then-Justice Willett once explained for our Court: "Were the law otherwise, any person who, for instance, wishes to be a ballerina or professional basketball player could routinely sue for disability discrimination if the Bolshoi or the San Antonio Spurs declined employment." *City of Houston v. Proler*, 437 S.W.3d 529, 532 & n.10 (Tex. 2014) (citing Tex. Lab. Code § 21.105).

By asking whether a person with a disability can "reasonably perform a job," Section 21.105 imposes an objective standard.

"Reasonableness has always entailed an *objective* inquiry." *Freeport-McMoRan Oil & Gas LLC v. 1776 Energy Partners, LLC*, 672 S.W.3d 391, 399 (Tex. 2023); *see also State v. Zurawski*, 690 S.W.3d 644, 662 (Tex. 2024); *In re State*, 682 S.W.3d 890, 894 (Tex. 2023) (per curiam). So an employer can't get carte blanche to fire anyone with a disability by conjuring up some idiosyncratic definition of what it means to "reasonably perform a job" at his company. Section 21.105's objective standard doesn't insulate pretextual terminations of that sort. But that's not what happened in this case.

Callaway can't satisfy the objective standard that the Legislature has imposed. We can assume that Callaway's PTSD (though not his alcoholism) qualifies as a Chapter 21 "disability." *See* Tex. Lab. Code § 21.002(6)(A) ("'Disability' means . . . a mental or physical impairment that substantially limits at least one major life activity of [an] individual . . . . The term does not include . . . a current condition of addiction to the use of alcohol . . . ."). The DPS Director determined that this PTSD would "impair [Callaway's] ability to reasonably perform a job" for the agency. *Id.* § 21.105. It's easy to understand why, even though none of us on this Court have ever served as a law-enforcement officer: DPS can't give someone a sidearm and a badge, send him out to handle stressful interactions with other Texans, and then have that officer snap under pressure. To do so would unreasonably endanger citizens and officers alike. Indeed, by "throwing his weight around" with officers from the school district's police department, as his own counsel put it at oral argument, Callaway created a grave risk of blue-on-blue violence.

Given the "presumptions of good faith and regularity" that we owe to "a coordinate branch[ ]" of state government, we'd be hard-pressed to contradict Director McCraw's determination of impairment under Section 21.105. *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 496 (Tex. 2024). That'd be so even if Callaway seriously argued in this Court that he's still qualified to perform a DPS job, despite suffering from PTSD that caused him to violate his oath at the high school.

Yet Callaway makes almost no effort in this regard, devoting less than a full page of his merits brief to the issue. He cites Section 21.105 *zero* times in this Court, choosing instead to discuss federal statutes and judicial opinions that shed no light on the meaning of the statutory text our Legislature enacted. *See, e.g.*, *Niehay*, 671 S.W.3d at 945–46 (Blacklock, J., concurring); *Tex. Tech Univ. Health Scis. Ctr.—El Paso v. Flores*, 709 S.W.3d 500, 511–13 (Tex. 2024) (Blacklock, J., concurring). As for pointing us to record evidence, Callaway comes up short by arguing that he remains "qualified for his position with the DPS" merely because he's "a licensed peace officer in the State of Texas." *See* Respondent's Br. 23.

Because Callaway suffers from PTSD that "impair[s his] ability to reasonably perform a job" within the meaning of Section 21.105, the prohibition in Section 21.051 doesn't even "appl[y]" to DPS's decision to terminate him because of that disability. Tex. Lab. Code § 21.105. Callaway's disability-discrimination claim therefore fails as a matter of law. *Cf. Chevron Corp. v. Redmon*, 745 S.W.2d 314, 318 (Tex. 1987) ("As a matter of law Redmon's disabilities do not constitute those severe impairments which article 5221k was intended to protect."). That claim

7

should've been dismissed along with all the others. *See, e.g., Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 800 (Tex. 2018).

### III

Texans should give thanks for men like Chris Callaway, who put his physical and mental health on the line throughout sixteen years of DPS service. But gratitude is also owed to Director McCraw, who made the final decision to fire a DPS Special Agent whose PTSD objectively impaired his ongoing ability to protect and serve. That decision promoted public safety, and it didn't give rise to a disability-discrimination claim under Chapter 21 of the Texas Labor Code. We reverse in part the judgment of the court of appeals and render judgment dismissing Callaway's claims against DPS.

James P. Sullivan
Justice

**OPINION DELIVERED:** April 10, 2026

8