Arturo ORTEGA, Plaintiff,

v.

Michael CHERTOFF, Secretary, Department of Homeland Security, Defendant.

No. EP–07–CV–285–KC.

United States District Court,
W.D. Texas,
El Paso Division.

Oct. 20, 2008.

Enrique Lopez, Law Office of Enrique Lopez, El Paso, TX, for Plaintiff.

Eduardo R. Castillo, Assistant United States Attorney, El Paso, TX, for Defendant.

### *ORDER*

KATHLEEN CARDONE, District Judge.

On this day, the Court considered "Defendant's Motion for Summary Judgment" ("Defendant's Motion") (Doc. No. 24), "Plaintiff's Responses [sic] to Defendant's Motion for Summary Judgment" ("Plaintiff's Response") (Doc. No. 29), and "Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment" ("Defendant's Reply") (Doc. No. 34). For the reasons set forth herein, Defendant's Motion is **GRANTED.**

## I. BACKGROUND

The following derives from Defendant's Motion, which includes Defendant's Proposed Undisputed Facts ("Proposed Undisputed Facts") and Oral Deposition of Arturo Ortega ("Ortega Deposition"); Plaintiff's Response, which includes Declaration of Arturo Ortega Given Under Penalty of Perjury ("Plaintiff's Declaration"); Plaintiff's Amended Complaint (Doc. No. 15); and Defendant's Answer to Plaintiff's Amended Complaint ("Defendant's Answer") (Doc. No. 17).

Plaintiff Arturo Ortega is currently employed by the United States Department of Homeland Security as an Officer at the Bureau of U.S. Customs and Border Protection ("CBP"), El Paso, Texas. Pl.'s Decl. ¶ 4. The CBP's primary mission is to "detect and prevent terrorists and instruments of terror from entering the United States, enforce applicable laws, and facilitate the orderly and efficient flow of legitimate trade and lawful travelers." Pro-

posed Undisputed Facts ¶ 2. Plaintiff has been a CBP Officer since 1998. Ortega Dep. 7:22–23 (July 7, 2008).

Plaintiff suffers from a sleep disorder as a result of two on-the-job automobile accidents, which occurred on June 15, 2000, and on March 19, 2003. *See* Pl.'s Decl. ¶ 5; *see also* Def.'s Mot. Ex. 13 at 2. Although Plaintiff sustained numerous injuries as a result of the accidents,[1] Plaintiff's doctor has stated that the sleep disorder is the only "actual physical limitation from the standpoint of his work description." Def.'s Mot. Ex. 13 at 2. Based on Plaintiff's doctor's recommendation, Defendant modified Plaintiff's work schedule to exclude Plaintiff from working any late night or early morning duty shifts. Pl.'s Decl. ¶ 12. This modified schedule began on November 2002 and continued until August 28, 2005. *Id.* David Longoria, Defendant's Port Director, states that the modified schedule was intended to be temporary, "in order to get [Plaintiff] to full working capacity." *See* Def.'s Mot. Ex. 16 at 3.

The job description for the CBP Officer position includes the requirement that all Officers "work on a shift and rotational basis and perform substantial amounts of overtime." Def.'s Mot. Ex. 10 at 5. According to Mr. Longoria, no CBP Officer can be permanently excused from working any particular shift because each Officer must be available at all hours of the day and night. *See* Def.'s Mot. Ex. 16 at 1. This allows the agency to "utilize all [O]fficers in any capacity" if the need arises, such as during an elevated alert level. *Id.* Before Plaintiff's first accident, Plaintiff was available to work all shifts, but claims that he "had only worked the midnight

shift, [sic] two to four times, on a rare occasion during [his] two-year [pre-accident] tenure with the Defendant." Pl.'s Decl. ¶ 26. Plaintiff also claims that "some day and evening shift CBP Officers have never worked the midnight shift." *Id.*

On May 11, 2005, Plaintiff's doctor submitted a report to the United States Department of Labor which stated that Plaintiff's inability to work late night or early morning shifts was permanent. *See* Def.'s Mot. Ex. 15 at 1. On August 23, 2005, Mr. Longoria informed Plaintiff that the CBP could not permanently accommodate Plaintiff and that if he was unavailable for certain shifts, Plaintiff did not meet the requirements of a CBP Officer. Proposed Undisputed Facts ¶ 37. While Plaintiff does not dispute the substance of this conversation, Plaintiff believes that Mr. Longoria "[used] his weight and position to threaten [Plaintiff]." Pl.'s Decl. ¶ 62. On August 29, 2005, Plaintiff obtained a note from his doctor releasing Plaintiff to work all shifts. Def.'s Mot. Ex. 18. The note stated that the doctor "had no choice" but to write the note because Plaintiff "has to pay his bills." *Id.* In response to this note, Mr. Longoria sent Plaintiff a letter stating that any release "that appears to have been coerced, forced, inconsistent with your previous documentation and physical restrictions, or against the advice of your physician will be held in abeyance pending the outcome of a fitness for duty exam." Def.'s Mot. Ex. 19.

Defendant alleges that at the August 23, 2005, meeting, Plaintiff requested that he be transferred to a CBP Officer position at the "Command Center" or to a CBP Officer position at "Ysleta Cargo." Proposed

---

**1.** Plaintiff states that his injuries include "lumbosacral root lesions; a pinched neck nerve; neuritis; general and tension headaches; disruption of [Plaintiff's] central nervous system; neck muscle spasticity; cervical disc discplacement; nonspecific back pain and/or lumbago; vision defects, hypermitropia; facial nerve damage; hypersomnia with sleep apnea; hearing loss; and mood disorders, depression, anxiety and impotence." Pl.'s Decl. ¶ 8.

Undisputed Facts ¶ 37. Plaintiff's Deposition confirms that he made these requests. *See* Ortega Dep. 112:6–16.[2] Plaintiff proceeded to apply for these positions,[3] but was not selected for either position. *See* Pl.'s Decl. ¶¶ 33, 37. As to the Command Center position, Plaintiff contacted Doyle Morris, the El Paso Field Office's Border Security Coordinator, on November 10, 2005, apprised Mr. Morris of his restrictions, and learned that the position requires availability for all shifts. *See* Def.'s Mot. Ex. 20. Plaintiff formally learned that he was not selected for the position on January 26, 2006. *See* Pl.'s Decl. ¶ 21. Plaintiff formally learned that he was not selected for the Ysleta Cargo position on January 8, 2006. *Id.* ¶ 24.

Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor on August 29, 2005, and on February 10, 2006. *See* Def.'s Mot. Ex. 2 at 2; Def.'s Mot. Ex. 5 at 2.[4] The August 29, 2005, counseling led to an Equal Employment Opportunity Commission ("EEOC") employment discrimination complaint in which Plaintiff alleged disability discrimination and a hostile work environment based on his August 23, 2005, meeting with Mr. Longoria.[5] *See* Def.'s Mot. Ex. 2. The February 10, 2005, counseling led to an EEOC employment discrimination complaint in which Plaintiff alleged disability discrimination and a hos-

tile work environment; in the complaint, Plaintiff specifically mentioned his non-selection for the available Command Center and Ysleta Cargo positions. *See* Def.'s Mot. Ex. 5.[6] The EEOC held a hearing on both complaints on January 25, 2007, and found that Plaintiff was not the victim of employment discrimination. *See* Def.'s Mot. Ex. 8.

Plaintiff filed a Complaint with this Court on August 17, 2007, and filed an Amended Complaint on February 12, 2008. *See* Pl.'s Compl. (Doc. No. 1); *see also* Pl.'s Am. Compl. In Plaintiff's Amended Complaint, Plaintiff claimed that Defendant discriminated against him on the basis of his disability in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 791 *et seq.* Pl.'s Am. Compl. 8. Plaintiff also claimed that he suffered retaliation because of his participation in the EEO process, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act. *Id.* at 8–9. Finally, Plaintiff claimed that Defendant's actions constituted a hostile work environment in violation of Title VII and the Rehabilitation Act. *Id.* at 9–10. Plaintiff seeks a declaratory judgment declaring Defendant's actions to be in violation of Title VII and the Rehabilitation Act, compensatory damages in the amount

---

**2.** Plaintiff's Declaration refers to Ysleta Cargo as part of a "realignment policy[.]" Pl.'s Decl. ¶ 22. Plaintiff states that he did not discuss this realignment policy with Mr. Longoria at their August 23, 2005, meeting. *Id.* ¶ 23. If this means that Plaintiff did not discuss Ysleta Cargo at the meeting, it is wholly at odds with Plaintiff's statement in his Deposition. This Court will therefore assume that Plaintiff did discuss Ysleta Cargo at the meeting, but not in the context of a realignment policy.

**3.** *Id.* at 130:9–23.

**4.** Plaintiff had filed a prior EEO complaint in 2004 against CBP Officer John Neatherlin,

but the complaint was later withdrawn. *See* Ortega Dep. 150:1–5.

**5.** Plaintiff's EEOC complaint states that the meeting occurred on August 23, 2003. Def.'s Mot. Ex. 2 at 3. The Court assumes that this is a typographical error, as all other evidence (including Plaintiff's Declaration) points to the meeting occurring on August 23, 2005.

**6.** Plaintiff did not allege retaliation in his second EEO complaint, but included "no further retaliation" in his list of requested remedies. *Id.* at 4.

of $300,000, attorney's fees, court costs, and prejudgment and post-judgment interest. *Id.* at 10.

## II. DISCUSSION

### A. Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ellison,* 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir.1996). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."

*Warfield,* 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir.2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. Title VII

Plaintiff's Complaint alleged retaliation and a hostile work environment under both Title VII and the Rehabilitation Act. Pl.'s Am. Compl. 8–10. By its terms, Title VII applies only to claims involving discrimination on the basis of race, color, sex, religion and national origin. *See* 42 U.S.C. § 2000e–2(a)(1). The Rehabilitation Act, however, applies to claims involving discrimination on the basis of disability. *See* 29 U.S.C. § 794(a). It is clear from the record that the instant case involves only discrimination on the basis of disability, as Plaintiff has asserted no claims of discrimination on the basis of race, color, sex, religion or national origin.[7] All analysis of the instant case will therefore proceed under the Rehabilitation Act.

### C. Rehabilitation Act

#### a. Failure to Exhaust Administrative Remedies

■ Defendant argues that Plaintiff did not exhaust his administrative remedies in pursuing his hostile work environ-

---

7. Plaintiff's Amended Complaint refers to Plaintiff as a "Hispanic with disabilities...." Pl.'s Am. Compl. ¶ 6. However, the record contains no legally relevant mention of Plaintiff's race.

ment claim and is therefore barred from bringing that claim in federal court. *See* Def.'s Mot. 7–9. The Rehabilitation Act subjects plaintiffs to the same procedural constraints—including administrative exhaustion—as Title VII. *See Prewitt v. United States Postal Svc.*, 662 F.2d 292, 304 (5th Cir.1981). In order to exhaust his administrative remedies under the Rehabilitation Act, a federal employee must contact an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory...." 29 C.F.R. § 1614.105(a)(1). After doing so, the only claims which may be brought in federal court are ones investigated by the EEOC or those which "can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970).

Both of Plaintiff's EEO complaints state that Plaintiff believes he has been subjected to a hostile work environment, though neither contains any facts which directly support these claims. *See* Def.'s Ex. 2 at 3; Def.'s Ex. 5 at 3–4. When the EEOC accepted Plaintiff's complaints for processing, Plaintiff was informed that his hostile work environment claims would not be considered by the EEOC. *See* Def.'s Mot. Ex. 6. Defendant argues that Plaintiff may only bring before this Court issues which were investigated by the EEOC and may not bring a claim that was stated in Plaintiff's EEO complaint but not further pursued by the EEOC. *See* Def.'s Mot. 3–5.

■■■ A primary purpose of the administrative exhaustion requirement is to "trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (quoting *Sanchez*, 431 F.2d at 466). If a plaintiff fails to mention a claim in his EEO complaint, the EEOC and the employer cannot resolve that claim, and this

purpose is thwarted. *See, e.g., Pacheco*, 448 F.3d at 792 (plaintiff failed to exhaust disparate impact claim because administrative complaint only alleged disparate treatment); *accord Gordon v. Peters*, 489 F.Supp.2d 729, 736 (S.D.Tex.2007). In *Pacheco*, the employer was not aware of the employee's latent disparate impact claim during the EEOC dispute resolution process and had no reasonable way of learning about it. *See Pacheco*, 448 F.3d at 792. In the instant case, however, Plaintiff specifically stated in both of his EEO complaints that he believed he was subjected to a hostile work environment. Because this was explicitly written on the face of the complaints, it could reasonably be expected to grow out of the complaints. *See Sanchez*, 431 F.2d at 466. Having read the complaints, Defendant and the EEOC could not have been unaware of Plaintiff's hostile work environment claim. Consequently, Plaintiff has exhausted his administrative remedies as to that claim and may allege it in this Court.

Defendant also argues that Plaintiff's non-selection claims—those based on Plaintiff's rejection from the available Command Center and Ysleta Cargo positions—are time-barred because Plaintiff failed to contact an EEO counselor within the required 45 days after the alleged discriminatory act. *See* Def.'s Mot. 6–7; *see also* 29 C.F.R. § 1614.105(a)(1). Plaintiff formally learned of his non-selection for the Command Center position on January 26, 2006, and formally learned of his non-selection for the Ysleta Cargo position on January 8, 2006. *See* Pl.'s Decl. ¶¶ 21, 24. His related contact with an EEO counselor was on February 10, 2006, or within 45 days. *See* Def.'s Mot. Ex. 5. According to Defendant, these claims are nevertheless untimely because an employee's claim accrues at the moment the employee believes, or has reason to believe, that he is the victim of discrimination. *See* Def.'s

Mot. 6–7 (citing *Ramirez v. City of San Antonio,* 312 F.3d 178, 182 (5th Cir.2002)). Defendant contends that Plaintiff's claims accrued on August 23, 2005, when Mr. Longoria told Plaintiff that he should not apply for a transfer because he is unqualified, and, alternatively, that the claim based on Plaintiff's non-selection to the Command Center position accrued on November 10, 2005, when Mr. Morris informed Plaintiff that the position requires availability for all shifts. *Id.* Plaintiff argues that the accrual period began when Plaintiff received formal notice of rejection rather than when Plaintiff was told he should not apply. *See* Pl.'s Resp. 8–9.

■ Plaintiff's non-selection claims are timely. The Fifth Circuit has held that a non-selection claim accrues from the date of actual non-selection rather than from the date of a communication advising one of potential non-selection, at which point an applicant "could still have held the legitimate expectation that he might be selected...." *Vadie v. Mississippi State Univ.,* 218 F.3d 365, 371 (5th Cir.2000). Before Plaintiff was formally rejected from the Command Center and Ysleta Cargo positions, he was only advised not to apply by Mr. Longoria and told about the shift requirements by Mr. Morris. This information may have indicated to Plaintiff that his selection was less likely, but it did not vitiate his reasonable expectation of nevertheless being selected. Consequently, Plaintiff's claims accrued when he formally learned that he was rejected.

### b. Disability Discrimination

The Rehabilitation Act prohibits discrimination by federal agencies against otherwise qualified individuals with disabilities, and incorporates the standards of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* for determining when such discrimination occurs. *See* 29 U.S.C. § 794(a), (d). The

ADA in turn incorporates the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to claims of discrimination on account of disability. *See, e.g., Raytheon Co. v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003).

Under the *McDonnell Douglas* framework, a plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination; this creates a presumption that the employer engaged in unlawful discrimination against the employee. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 517, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that he is disabled, that he is otherwise qualified for the job, and that his employer made an adverse employment decision because of his disability. *Hamilton v. Sw. Bell Tel. Co.,* 136 F.3d 1047, 1050 (5th Cir.1998). If the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Hicks,* 509 U.S. at 506–507, 113 S.Ct. 2742. If the employer successfully carries this burden of production, the presumption of unlawful discrimination drops out. *Id.* at 510–11, 113 S.Ct. 2742. The employee must then show that "the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination." *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir.2004). Defendant alleges that Plaintiff has failed to establish a prima facie case because he has not shown that he is disabled. *See* Def.'s Mot. 8–10.

■ The ADA defines "disability" as "(A) a physical or mental impairment that *substantially limits one or more of the*

*major life activities* ...; (B) a record of such an impairment; or, (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (emphasis added). Disability is determined on a case-by-case basis. *See Albertson's Inc. v. Kirkingburg,* 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999). In order to establish a prima facie case of disability discrimination and survive summary judgment, "a plaintiff must prove a substantial limit with specific evidence that *his particular* impairment substantially limits *his particular* major life activity." *Waldrip v. GE,* 325 F.3d 652, 656 (5th Cir.2003) (describing standard for establishing disability as "exacting") (emphasis in original). In other words, there are no per se disabilities under the ADA. *Id.*

In his Response, Plaintiff claims that he is substantially limited in the major life activities of sleeping and working, as well as hearing, seeing, walking, and breathing. Pl.'s Resp. 15. Plaintiff provides no evidence to support the latter four claims. Plaintiff's Response contains conclusory statements such as: "Mr. Ortega testified that he has suffered permanent vision loss.... Certainly, Mr. Ortega's vision loss substantially limits his ability to see." *Id.* In support of this proposition, Plaintiff directs the Court to Plaintiff's Declaration, which again contains identical conclusory statements such as: "I testified that I also have suffered permanent vision loss.... Certainly, my vision loss substantially limits my ability to see." Pl.'s Decl. ¶¶ 29–30. Such statements do not begin to suffice. In fact, Plaintiff's doctor has stated that "[Plaintiff] does not, at this point, have actual physical limitations from the standpoint of his work description with the exception of [Plaintiff's] sleep disorder." Def.'s Mot. Ex. 13 at 2.

The remaining major life activities in which Plaintiff believes he is substantially limited are sleeping and working. The Fifth Circuit has not yet considered whether sleeping is a major life activity, although other circuits have concluded that it is. *See Carter v. Ridge,* 255 Fed.Appx. 826, 830 (5th Cir.2007) (discussing consideration of sleep as major life activity by sister circuits). Assuming, arguendo, that sleeping is a major life activity, Plaintiff again fails to provide specific evidence that he is substantially limited in it.

■■ Whether an impairment is substantially limiting depends on "its nature and severity, its duration or expected duration, and its permanent or expected permanent or long-term impact." *Dupre v. Charter Behavioral Health Sys.,* 242 F.3d 610, 613 (5th Cir.2001). To establish a substantial limit in the major life activity of sleeping, a plaintiff "must present evidence, beyond vague assertions of a rough night's sleep or a need for medication, that his affliction is worse than that suffered by a large portion of the nation's adult population." *Carter,* 255 Fed.Appx. at 830 (quoting *Nadler v. Harvey,* No. 06–12592, —— Fed.Appx. ——, ——, 2007 WL 2404705, at *5–6, 2007 U.S.App. LEXIS 20272, at *18–19 (11th Cir. Aug. 27, 2007)); *see also Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 644 (2d Cir.1998). This Court has held that the inability to enjoy more than three or four hours of uninterrupted sleep does not qualify as a substantial limitation. *Pedroza v. Autozone,* 536 F.Supp.2d 679, 696 (W.D.Tex. 2008); *accord Scheerer v. Potter,* 443 F.3d 916, 919 (7th Cir.2006) ("intermittent disrupted sleep" not substantial limitation).

■ Plaintiff has produced only vague and imprecise evidence to support his claim that he is substantially limited in his ability to sleep. Plaintiff's doctor has stated that Plaintiff has a sleep disorder, but has not provided any concrete details explaining the severity of the disorder or its effect on Plaintiff's life. When specifically

asked about his sleeping patterns, Plaintiff testified that he "couldn't sleep," that he "slept some," that he "can't tell" how long he slept, and that he would wake up "a lot of times" and was "very tired." *See* Ortega Dep. 126:7–25. Plaintiff's Declaration similarly lacks a single statement clarifying the extent to which Plaintiff is unable to sleep.

This Court notes that it is the lack of evidence in the record rather than the nature of Plaintiff's predicament that is fatal to his claim. Plaintiff's sleep disorder may in fact be sufficiently severe to qualify as a disability. Plaintiff's situation is compelling: he suffered two accidents while discharging his duties, he has received extensive medical treatment, and he was previously accommodated by his employer. None of these facts, however, are either necessary or sufficient, and none can serve as a substitute for the specific evidence required to establish a prima facie case of discrimination on the basis of disability. This claim fails.

█ Plaintiff also argues that he is substantially limited in the major life activity of working. To establish a substantial limit in the major life activity of working, Plaintiff must show that he is significantly restricted in the "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Toyota Motor Mfg., Ken-*

*tucky, Inc. v. Williams,* 534 U.S. 184, 200, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Once again, Plaintiff has not produced any evidence to guide this Court in making such a determination. Plaintiff's claim that he is substantially limited in the major life activity of working therefore fails.

### c. Retaliation

█ In his Amended Complaint, Plaintiff alleges that Defendant retaliated against him for his EEO activity. *See* Pl.'s Am. Compl. 8–9. "To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that: (1) he engaged in a protected activity (e.g., the filing of an EEO complaint); (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the adverse employment action and the protected activity...." *Calderon v. Potter,* 113 Fed.Appx. 586, 592 (5th Cir.2004).[8] The protected activities that Plaintiff alleges caused Defendant's retaliation are the EEO complaints filed on August 29, 2005, and February 10, 2006. *See* Pl.'s Resp. 22–23. Additionally, in 2004, Plaintiff had filed an EEO complaint, later withdrawn, against CBP Officer John Neatherlin. *See* Pl.'s Resp. 22–23.[9] The adverse employment actions that Plaintiff alleges were taken in retaliation for Plaintiff's EEO activity are the denial of accommodation by Mr. Longoria on August 23, 2005, and the non-selection for the avail-

---

**8.** The Fifth Circuit has never explicitly held that this framework should be used in analyzing retaliation claims under the Rehabilitation Act. However, the Fifth Circuit has applied this framework in two unpublished cases, *Calderon* and *Shannon v. Henderson,* No. 01–10346, 2001 WL 1223633, at *8–9 (5th Cir. Sept. 25, 2001). Other circuits have both applied and endorsed this framework. *See, e.g., Hiler v. Brown,* 177 F.3d 542, 545 (6th Cir.1999); *Reg'l Econ. Cmty. Action Program v. City of Middletown,* 294 F.3d 35, 54 (2d

Cir.), *cert. denied,* 537 U.S. 813, 123 S.Ct. 74, 154 L.Ed.2d 16 (2002).

**9.** Plaintiff's Response states: "Also, in December 2004, Mr. Ortega initiated an EEO complainant [sic] against Supervisory CBP Officer Jon [sic] Neatherlin." Pl.'s Resp. 22. This sentence stands alone as a separate paragraph in the Response, and it is unclear whether Plaintiff alleges that the 2004 complaint was the cause of Defendant's retaliation. The Court will nevertheless assume that Plaintiff so alleges.

able Command Center and Ysleta Cargo positions in January 2006. *See* Pl.'s Am. Compl.; *see also* Pl.'s Resp.

The causal link that Plaintiff must show between the adverse employment action and the protected activity is not as stringent as the "but for" standard, and Plaintiff need not show that his EEO activity is the sole reason for the denial of accommodation or non-selection. *See Evans v. Houston,* 246 F.3d 344, 353 (5th Cir.2001). However, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case. . . ." *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471 (5th Cir.2002) (quoting *Swanson v. General Servs. Admin.,* 110 F.3d 1180, 1188 n. 3 (5th Cir. 1997)) (emphasis in original). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citing *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir.2001)). "[A] time lapse of *up to* four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans,* 246 F.3d at 354 (quoting *Weeks v. NationsBank N.A.,* No. 3:98-CV-1352-M, 2000 WL 341257, at *3, 2000 U.S. Dist. LEXIS 4069, at *9 (N.D.Tex. Mar. 30, 2000)) (emphasis added).

Plaintiff fails to provide any direct evidence of a causal link. At the time that Plaintiff alleges Mr. Longoria denied Plaintiff accommodation—August 23, 2005—Plaintiff's only prior EEO activity was his withdrawn complaint against Mr. Neatherlin in 2004. Plaintiff has produced no evidence that Mr. Longoria was aware of this complaint other than his belief that Mr. Longoria generally knows "what's going on with the El Paso ports[.]" *See* Ortega Dep. 122:16–18. By the time Plaintiff was rejected from the Command Center and Ysleta Cargo positions in January 2006, Plaintiff had filed an additional EEO complaint against Mr. Longoria. However, Plaintiff has produced no evidence that Mr. Longoria was involved in his non-selection other than his belief that Mr. Longoria had "final say" over Plaintiff's selection. Pl.'s Resp. 23. Plaintiff has also produced no evidence that those who were involved in his non-selection were aware of his prior EEO activity. On the other hand, Defendant presents statements by the selecting officials for the positions—Mr. Neatherlin for the Command Center and Mr. Morris for Ysleta Cargo—in which both state that they were not aware of Plaintiff's prior EEO activity. *See* Def.'s Mot. Ex. 21 at 3; *id.* Ex. 22 at 3. Further, both state that they did not discuss Plaintiff's hiring with Mr. Longoria. *See id.* Ex. 21 at 3; *id.* 22 at 3.

Since Plaintiff has provided no other evidence of a causal link, the only remaining evidence is the temporal proximity between Plaintiff's protected actions and Defendant's adverse employment decisions. In the instant case, the temporal link is too remote. The alleged denial of accommodation, which occurred in August 2005, was at least seven months removed from Plaintiff's most recent protected activity at the time, which occurred in 2004. The non-selection, which occurred in January 2005, was more than four months removed from Plaintiff's most recent protected activity at the time, which occurred in August 2005. Both exceed the longest temporal connection—four months—that the Fifth Circuit has held to be sufficient to survive summary judgment. *See Evans,* 246 F.3d at 354. Accordingly, Plaintiff's retaliation claim fails.

### d. Hostile Work Environment

 Plaintiff's Complaint alleges that Defendant created a hostile work environment. *See* Pl.'s Compl. 9. To establish a prima facie claim of hostile work environment under the Rehabilitation Act, a plaintiff must, inter alia, establish that he belongs to a protected group. *See, e.g., Soledad v. U.S. Dep't of Treasury,* 304 F.3d 500, 506 (5th Cir.2002). Because Plaintiff has not produced any specific evidence showing that he is substantially limited in a major life activity, Plaintiff has failed to establish that he belongs to the relevant protected group of persons with a disability. Consequently, Plaintiff fails to establish a prima facie claim of hostile work environment.

### III. CONCLUSION

For the reasons outlined above, Defendant's Motion for Summary Judgment (Doc. No. 24) is hereby **GRANTED.**

**THE CLERK SHALL CLOSE THE CASE.**

**SO ORDERED.**