

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00312-CV

———————————————

NYLA LAMB, Appellant

V.

TARRANT COUNTY, TEXAS, Appellee

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-334356-22

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

This is an interlocutory appeal. Appellant Nyla Lamb was employed as a deputy sheriff with the Tarrant County Sheriff's Office (TCSO). She originally sued the TCSO for violations of Texas Labor Code Chapter 21, including claims for failure to train and promote based on race and sex and claims for discrimination and retaliation related to her termination in 2021. She subsequently amended her petition to substitute Tarrant County (the County) as the proper defendant. The County filed a plea to the jurisdiction addressing her failure-to-train and failure-to-promote claims, and the trial court granted the County's plea and dismissed those claims.[1] Lamb brings this interlocutory appeal challenging the trial court's order dismissing those claims and its order sustaining the County's evidentiary objections. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). We will affirm.

## I. Factual Background

Lamb alleged, inter alia, that the County discriminated against her when she failed to receive a promotion after a September 2020 promotion process. Her pleadings do not state a date on which any alleged failure to promote occurred.

---

[1]Lamb's employment was reinstated in 2022. Because the trial court dismissed only Lamb's claims related to promotion and training, her retaliation claim is not before this court, and nothing in this opinion should be read as a comment on the merits of or on the trial court's jurisdiction over that claim. Relatedly, any claim by Lamb that the County discriminated against her by terminating her employment is not before this court.

2

The September 2020 promotion process generated a list of eleven candidates, ranked by score, to fill sergeant positions in the TCSO's nonconfinement portions (operations sergeants) for a one-year period. Fifty percent of each candidate's score was based on a written test, and the other fifty percent came from interviews with a promotion panel. Lamb's interview with the promotion panel occurred on September 11, 2020. On the September 14, 2020 promotion list that resulted from the promotion process, Lamb was ranked ninth out of the eleven candidates on the list. Promotions were made from the list in order of candidate ranking.

Lamb was aware of the promotion list and its contents on or about the date of its publication in September 2020. Lamb filed her administrative complaint (EEOC charge) alleging promotion discrimination with the EEOC and Texas Workforce Commission (TWC) on July 15, 2021. She filed this suit in June 2022. In her deposition, Lamb testified that she had no complaint about the written test that was administered or her score on the test. Her complaint about the September 2020 promotion process was that the scoring of her promotion interview involved discrimination based on race or sex or both. Lamb testified in her deposition that she did not believe that the TCSO did anything discriminatory or retaliatory with the list after September 14, 2020.

The County attached excerpts from Lamb's deposition to its plea to the jurisdiction and also submitted evidence indicating that only the top six individuals on the list were promoted and that the fifth and sixth individuals on the list were

3

promoted on February 27, 2021 and March 6, 2021, respectively. The County further produced evidence that the TCSO had no other open operations sergeant positions until August 2021. Two specialized sergeant positions became available in August 2021, but they were filled in October 2021, after the 2020 promotion list had expired.

In Lamb's response to the County's plea, she disagreed with the County's evidence of when the TCSO had open operations sergeant positions. She attached her own affidavit in which she asserted that when she filed her July 15, 2021 EEOC charge, the TCSO had two open sergeant positions; that the positions were deliberately left unfilled until the 2020 promotion list expired; and that based on her place on the promotion list, she should have been promoted into one of those open positions.[2]

---

[2]The parties presented conflicting evidence about how many sergeant positions became open while the 2020 promotion list was active and when those positions were filled. The County attached to its plea an affidavit from the TCSO's personnel administrator. The administrator listed the six persons promoted off the 2020 promotion list and the dates on which they were promoted. Her list indicated that the fifth person was promoted on February 27, 2021 and that the sixth person was promoted on March 6, 2021. The administrator further stated that no more operations sergeant positions opened until August 2021, that two specialized sergeants positions became available that month, and that the TCSO's practice for filling specialized positions is "to seek a candidate with specialized interest or experience rather than simply promoting off the general . . . [promotion list]." The administrator testified at the hearing on the County's plea, and she similarly testified about when positions became available, who filled them, and when the TCSO filled them. Her testimony included discussion of the positions that came available in February and March 2021, which Lamb had claimed had gone unfilled until the 2020 promotion list expired. Lamb's affidavit, on the other hand, though not entirely clear on timing, suggested that these positions should have been filled by the eighth and ninth persons on the promotion list.

In addition to asserting failure-to-promote claims, Lamb also alleged in her first amended petition that the County had "continually hindered" her from registration in training courses for which she had requested enrollment from July through October 2020 and again in February 2021. These allegations also appear in her EEOC charge. However, in Lamb's affidavit attached to her plea-to-the-jurisdiction response, she noted that her supervisor had requested her enrollment in the February 22–26, 2021 training that she had asked to attend; that the County had approved her to attend the course on those dates; and that she had informed her superior that she could not attend because she had unrelated training due to a miscommunication about the actual dates for the course.

## II.     Standard of Review and Legal Principles

We review a challenge to subject matter jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). Ordinarily, a plea to the jurisdiction challenges the plaintiff's pleadings, asserting that the alleged facts do not affirmatively demonstrate the court's jurisdiction. *See Mission Consol. I.S.D. v. Garcia,* 372 S.W.3d 629, 635 (Tex. 2012). We "construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman v. Williamson Cnty.,* 369 S.W.3d 137, 150 (Tex. 2012). "[H]owever, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Alamo Heights I.S.D. v. Clark,* 544 S.W.3d 755, 771 (Tex. 2018).

5

A plea to the jurisdiction may also challenge the existence of jurisdictional facts, and when it does, the parties may present evidence. *Mission Consol. I.S.D.*, 372 S.W.3d at 635. When a plea to the jurisdiction challenges the existence of jurisdictional facts, "a trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion." *Id.* The movant must present proof demonstrating that the court lacks jurisdiction. *Id.* The burden then shifts to the nonmovant to show that there is a disputed material fact on the jurisdictional issue. *Id.*; *see* Tex. R. Civ. P. 166a(c) (providing that to prevail on traditional summary judgment motion, movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as matter of law).

"When a jurisdictional issue is not intertwined with the merits of the claims, . . . disputed fact issues are resolved by the court, not the jury." *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015); *see Van Dorn Preston v. M1 Support Servs., L.P.*, 642 S.W.3d 452, 459 (Tex. 2022). The timeliness of a plaintiff's discrimination complaints under Texas Labor Code Chapter 21 does not implicate the merits of the case. *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 807–08 (Tex. App.—Austin 2009, no pet.); *Tex. Dep't of Pub. Safety v. Alexander*, 300 S.W.3d 62, 71–72 (Tex. App.—Austin 2009, pet. denied).

When the trial court does not issue findings of fact, the court of appeals should presume that the trial court resolved all factual disputes in favor of its determination. *Alexander*, 300 S.W.3d 62, 72.

Even in the plea-to-the-jurisdiction context, we review a trial court's rulings to admit or exclude evidence under an abuse of discretion standard. *Gonzalez ex rel. Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017); *DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 827 (Tex. App.—Fort Worth 2006, no pet.). We consider whether a trial court abused its discretion by determining if it acted "without reference to any guiding rules and principles." *Id.* at 678 (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). To obtain a reversal on the trial court's exclusion of evidence, an appellant must establish that the error was harmful and was calculated to cause and probably did cause the rendition of an improper judgment. Tex. R. App. P. 44.1(a). To meet that burden, an appellant must show that the erroneously excluded evidence was controlling on a material issue dispositive of the case, that the evidence was not cumulative, and that its absence probably resulted in an improper judgment. *Gunn v. McCoy*, 554 S.W.3d 645, 671 (Tex. 2018); *In re Commitment of Hale*, No. 02-21-00373-CV, 2023 WL 2325199, at *11 (Tex. App.—Fort Worth April 27, 2023, pet. denied) (mem. op.). Generally, errors relating to the admission or exclusion of evidence will not entitle an appellant to reversal unless the appellant can show the entire case turns on the complained-of evidence. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (op. on reh'g); *Commitment of Hale*, 2023 WL 2325199, at *11.

## III. Analysis

Lamb raises six issues. First, she asserts that the trial court erred in granting the County's plea to the jurisdiction. Under this first issue, she argues that she timely complained of promotion discrimination and failure-to-train discrimination. Her remaining issues relate to the exclusion of paragraphs 18, 22, 23, 24, and 25 of her affidavit offered in response to the plea to the jurisdiction; those paragraphs addressed her contentions that the County had deliberately left two sergeant positions unfilled until the 2020 promotion list expired rather than promote from the list. Because we hold below that, even if we consider the excluded affidavit paragraphs, the trial court did not err by granting the County's plea, we will overrule Lamb's dispositive first issue and affirm the trial court's judgment.

### A. Granting of the Plea to the Jurisdiction on Promotion and Training Claims

The County's plea to the jurisdiction contended that Lamb's claims were time-barred, so the trial court lacked subject matter jurisdiction. Section 21.202(a) of the Texas Labor Code provides that a charge of employment discrimination must be filed with the TWC within 180 days of the alleged unlawful employment action. Tex. Lab. Code Ann. § 21.202(a). This time limit is mandatory and jurisdictional when the defendant is a governmental entity. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 504–05 (Tex. 2012); *see also Univ. of Tex. Health Sci. Ctr. at Hous. v. Carroll*, No. 01-23-00014-CV, 2024 WL 3417051, at *8 (Tex. App.—Houston [1st Dist.] July

16, 2024, pet. denied) (mem. op.); *Pharr-San Juan-Alamo I.S.D. v. Lozano*, No. 13-16-00408-CV, 2018 WL 655527, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 31, 2018, pet. denied) (mem. op., not designated for publication). This 180-day statute of limitations runs from the date on which the alleged unlawful employment practice occurs. *Chatha*, 381 S.W.3d at 504–05.

An exception to application of the 180-day limitations period for the discriminatory act is the continuing-violation doctrine. *Univ. of Tex. Health Sci. Ctr.*, 2024 WL 3417051, at *9; *Drew v. City of Hous.*, 679 S.W.3d 779, 785 (Tex. App.—Houston [1st Dist.] 2023, no pet.). This doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Univ. of Tex. Health Sci. Ctr.*, 2024 WL 3417051, at *9. Under the continuing-violation theory, a plaintiff must show an organized scheme leading to and including a present violation because it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Id.* In a continuing-violation claim, a plaintiff need not establish that all the alleged discriminatory conduct occurred within 180 days if the plaintiff can show a series of related acts, including one or more that are within the limitations period. *Tex. S. Univ. v. Nayer*, No. 01-21-00497-CV, 2023 WL 138621, at *3 (Tex. App.—Houston [1st Dist.] Jan. 10, 2023, no pet.) (mem. op.). Termination, failure to promote, denial of transfer, and refusal to hire are discrete acts, as opposed to creation of a hostile work

9

environment, which is a continuing violation. *Univ. of Tex. Health Sci. Ctr.*, 2024 WL 3417051, at *9.

Lamb filed her EEOC charge on July 15, 2021. Thus, the trial court had no jurisdiction over any claim based on an act that occurred before mid-January 2021 unless (1) the act was part of a continuing violation and (2) another act related to that continuing violation occurred after that date. Lamb argues on appeal that her claims were based on the following acts of discrimination:

- discriminating against her in scoring her promotion interview,

- not promoting her into a sergeant position that became available in 2021 and instead holding the position open until the 2020 promotion list expired, and

- denying her opportunities for training.

**B. Application of Law to Lamb's Claims**

### 1. Discrimination in Promotion Interview and Failure to Promote from the List

We first address Lamb's arguments regarding the dismissal of her failure-to-promote claims. Lamb makes two arguments: (1) if she had not been discriminated against in her promotion interview, she would have been fifth on the 2020 promotion

list and therefore would have been promoted no later than February 2021[3] and (2) even as the ninth candidate on the list, she would have been promoted if the TCSO had not deliberately left two open sergeant positions unfilled until after the 2020 promotion list expired.

As for her first argument, Lamb did not file her charge until more than 180 days from the date on which the scoring occurred. *See* Tex. Lab. Code Ann. § 21.202. The promotion process was a discrete event for which Lamb was required to file an administrative complaint within 180 days. *See Alief I.S.D. v. Brantley*, 558 S.W.3d 747, 755 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("[E]ach discrete discriminatory act starts a new clock for filing charges alleging that act."); *Harris v. Fiesta Tex., Inc.*, No. 04-14-00304-CV, 2015 WL 82888, at *2 (Tex. App.—San Antonio Jan. 7, 2015, pet. denied) (mem. op.) ("Where a discrete event occurs that 'should have alerted the average lay person to act to protect his rights,' . . . the 'mere perpetuation of the *effects* of time-barred discrimination' is not a continuing violation." (quoting *Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985)). Indeed, Lamb herself had testified that she did not believe that the TCSO had done anything discriminatory or retaliatory with the list after September 14, 2020. Any claim based on the September 2020 promotion process was untimely.

---

[3]For purposes of making this argument, Lamb appears to accept the County's evidence that the position that was filled in February 2021 was filled with the person who was fifth on the promotion list.

Lamb argues that she did not have to file an administrative complaint within 180 days of learning her ranking on the 2020 promotion list because under the law then in place—this court's decision in *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 144 (Tex. App.—Fort Worth 2000, pet. denied)—only discrimination in "ultimate employment decisions" is actionable and that discrimination in the promotion interview was not an ultimate employment decision on which she could base a claim. In *Elgaghil*, we stated that "[u]ltimate employment decisions that are actionable include decisions to hire, discharge, promote, compensate, or grant leave" but do not include "events such as disciplinary filings, supervisor's reprimands, . . . poor performance reviews[,] . . . hostility from fellow employees, verbal threats to fire, reprimands, criticism of the employee's work, and negative employment evaluations." *Id.* at 143. Lamb argues that under that precedent, she was required to wait until she was actually denied a promotion because of the discrimination. We disagree.

The 2020 promotion process was a promotion decision, not simply a negative employment evaluation. *See, e.g., Metro. Transit Auth. of Harris Cnty. v. Douglas*, 651 S.W.3d 122, 133 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (upholding denial of plea to the jurisdiction on plaintiff's claim of gender discrimination in interview process for promotion to captain). That is, when the 2020 promotion list was created, the decision was made that Lamb would be ninth in line (rather than fifth) for a promotion. When, later, someone other than Lamb was promoted into the fifth open sergeant position, that is when the consequences of the discrimination

12

"became most painful," but it is not when the discrimination in an ultimate employment decision occurred. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (stating that the proper focus in a discrimination claim is "'upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful'" (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S. Ct. 498, 504 (1980))); *see City of El Paso v. Granados*, 334 S.W.3d 407, 411 (Tex. App.—El Paso 2011, no pet.) ("The date the allegedly discriminatory decision goes into effect, or the date on which the effect of such decision is realized by the employee, does not alter the commencement of the 180–day period."); *Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *3 (Tex. App.—Texarkana Dec. 10, 2008, pet. denied) (mem. op.) ("A new charging period does not begin with a subsequent nondiscriminatory act that causes some additional adverse effect resulting from the past discrimination."). Lamb's not being promoted into the fifth open position was but the inevitable consequence of the promotion process and her ranking during that process. *See Univ. of Tex.–MD Anderson Cancer Ctr. v. Phillips*, No. 01-18-00221-CV, 2018 WL 6379503, at *6 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) (mem. op.) ("[T]he limitations period applicable to Phillips's claims under the TCHRA commenced on March 14, 2016, when Phillips was informed of UTMDA's intent to terminate her employment, and not when that decision later came to fruition.").

Lamb cites *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000), and *Ortega v. Chertoff*, 600 F. Supp. 2d 828, 835 (W.D. Tex. 2008), to argue that the deadline to file her administrative complaint began running when the County filled the last open position into which she could have been promoted. Those "non-selection" cases do not help her. Those cases stand for the proposition that when an applicant for an open position had been given a tentative notice that he would not be selected for the position, but he could still hold a legitimate expectation that he might be selected, the time to file their complaint did not start running until he officially learned of his rejection. *See Vadie*, 218 F.3d at 371 ("Once Dr. Losure was hired, Dr. Vadie knew or should have known that he had lost his bid for any of the three faculty vacancies. . . . [I]t was then that his claim accrued and the 180–day clock began to run."); *Ortega*, 600 F. Supp. 2d at 835 (noting that information the plaintiff had received "may have indicated to [the p]laintiff that his selection was less likely, but it did not vitiate his reasonable expectation of nevertheless being selected," and "[c]onsequently, [the p]laintiff's claims accrued when he formally learned that he was rejected").

Here, when the promotion list came out, Lamb knew exactly what her ranking was and that because of her ranking, she would not be promoted until the ninth position opened. She did not need to wait until the list expired without her being promoted to know how the interview had affected her ranking. Her not being promoted into the fifth open position—as she would have been, she claimed, but for discrimination in her promotion interview—or to any other position that was filled by

14

someone ahead of her on the promotion list was the inevitable result of the promotion process and was not a new act of discrimination. She cannot make her untimely discrimination complaint timely by relying on the timing of the consequences of the promotion process.

We now turn to Lamb's argument that the County deliberately held positions open rather than fill them from the 2020 promotion list. According to the County, there were no other operations sergeant positions available to be filled before Lamb filed her EEOC charge on July 15, 2021. Lamb's brief is not entirely clear on when she believes the persons above her on the list were promoted into their positions, and neither was her first amended petition or her response to the County's plea. But her argument seems to be that when the two positions became open in February and in March, six people had already been promoted from the list; that those positions should have been filled by the next two people on the promotion list; that the seventh person on the list resigned, making the eighth person and Lamb the next two people on the list; and that she and the eighth person should have been promoted into those two open positions. In Lamb's response to the County's plea to the jurisdiction, she asserted that the County "intentionally left [those positions] open for approximately six months" until the 2020 promotion list expired.[4] She made these same statements in her affidavit attached to her response.

---

[4] Lamb's response to the County's plea asserted that "but for the wrongful termination, which was later rescinded, she should have been promoted." Lamb did

15

However, even accepting as true the assertions in Lamb's affidavit, Lamb did not include these allegations in her first amended petition. Moreover, even if the County held these positions open until the 2020 promotion list expired, and even if the County did so for discriminatory reasons, Lamb may not complain about its doing so in this suit. The only reference to her not being promoted into an open position that she included in her EEOC charge was an assertion that in March 2021, "the [promotion] list was on #8, meaning [she] was next to be promoted to Sergeant since [she] was #9." Her EEOC charge did not include any allegation about positions being open at that time and held open to avoid promoting her. Instead, the detail she included about being next in line was in support of her argument that, but for her termination, she would have been next in line for a promotion. Moreover, any discrimination related to the County's not filling those positions after the date of Lamb's EEOC charge obviously could not have been included in the charge.

If Lamb filed a second EEOC charge to include claims based on positions being held open, the record does not include it. Accordingly, she has not filed an

not allege in either her EEOC charge or her first amended petition that before the 2020 promotion list expired, someone was promoted from that list into a position that she would have received if not for her termination, and she produced no evidence to that effect. Instead, she argued in her response to the County's plea that the County held positions open rather than fill them from the 2020 promotion list and thus that no one was promoted from the 2020 promotion list after positions opened in February and March 2021 (or in August, according to County). Thus, we construe this statement in her response to be an argument that she would have been promoted if she had not been terminated *and* if the County had not held positions open rather than filling them.

16

administrative complaint regarding the County's leaving positions unfilled until the 2021 promotion list expired. *See Sw. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 401–02 (Tex. App.—El Paso 2018, no pet.) (noting that not every detail of a complaint needs to be "presaged in the EEOC filing," but "the substance of the claim still must fall within the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination" (citation and internal quotation marks omitted)); *see also Tex. Dep't of Pub. Safety v. Callaway*, No. 13-23-00166-CV, 2024 WL 4511216, at *11 (Tex. App.—Corpus Christi–Edinburg Oct. 17, 2024, pet. filed) (mem. op.) (stating when new discrete acts of discrimination occur after original administrative charge is filed, complainant must either timely file a new administrative complaint or amend the original charge); *Holloway v. Dallas Cnty. Hosp. Dist.*, No. 05-20-01114-CV, 2022 WL 17883799, at *14 (Tex. App.—Dallas Dec. 23, 2022, no pet.) (mem. op.) (concluding that the plaintiff's "discriminatory failure to hire claims occurring after his March 9, 2013 EEOC charge, for which he did not exhaust his administrative remedies, were properly dismissed"); *Harris Ctr. for Mental Health & IDD v. McLeod*, No. 01-20-00838-CV, 2022 WL 1632173, at *3, *6 (Tex. App.— Houston [1st Dist.] May 24, 2022, no pet.) (mem. op.) (holding that because plaintiff did not file a subsequent EEOC charge complaining of any employment actions after she had filed her initial charge, plaintiff did not exhaust her administrative remedies as to employer's post-charge actions); *Wernert v. City of Dublin*, 557 S.W.3d 868, 875 (Tex. App.—Eastland 2018, no pet.) (holding plaintiff's claims were precluded because he

17

did not file an administrative charge for discrete acts that occurred after he filed his EEOC charge).

Because Lamb did not timely file an administrative complaint about the 2020 promotion process and did not file an administrative complaint about anything that happened after she filed her July 15, 2021 EEOC charge, the trial court did not err by dismissing her failure-to-promote claims.

### 2. Failure to Train

We now turn to Lamb's arguments regarding the dismissal of her failure-to-train claims. Lamb's brief states that she was denied the opportunity to attend a Crime Scene Investigation (CSI) training, which she needed for her Advanced Peace Officer's license, in October 2020,[5] November 2020,[6] February 2021, and March 2021. She also complains that she had to pay for two separate courses, a Spanish course and a "Child Safety Check List" course, despite those courses being available for free at the County's Academy. Lamb argues that denying her training affected her

---

[5]Lamb's EEOC charge asserted that a biracial male with less experience than her was sent instead and that her immediate superior told her that the other officer had submitted his request before Lamb's.

[6]Lamb's brief says that she was not enrolled in or informed about a November CSI course, but the brief also says that she was unable to attend the course "because she had a scheduled trip out of town that week."

chances of promotion because she had been told in her 2020 promotion interview that she needed specialized training.[7]

### a. CSI course

Regarding the CSI course, we need not consider whether any denial of training that occurred before January 2021 was actionable because, as we held above, Lamb did not timely file her administrative charge as to anything that happened before that date. Thus, we focus on her arguments about the February and March 2021 courses.

As to Lamb's not attending the February 2021 CSI course, the County raised in its plea to the jurisdiction a ground that was not based on the timing of Lamb's EEOC complaint: the County alleged that there was no evidence that any alleged training interference in February 2021 had more than a de minimis effect on Lamb's employment status. Moreover, even if the County had not raised this ground in its plea to the jurisdiction, because we are "obliged to ascertain" if jurisdiction exists, our review of the trial court's ruling is not limited to the grounds set forth in the County's plea. *See Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 20 (Tex. 2024) (quoting *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358–59 (Tex. 2004)).

Although Chapter 21 waives a governmental entity's immunity from suit for claims under that chapter, it does so "only if the plaintiff [1] alleges facts that would

---

[7]As the County notes, Lamb's standing in the September 2020 promotion process could not have been affected by any training denial that occurred after that process. Thus, we assume that her argument is that her lack of training after September 2020 could have affected her future promotion chances.

establish that the [governmental entity] violated [the chapter] and, [2] when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that allegation." *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 709 S.W.3d 500, 504–05 (Tex. 2024) (citation and quotation marks omitted). When, as here, the plaintiff has no direct evidence of discrimination, *see Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.) ("Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." (quoting *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002))), we use a burden-shifting framework "to evaluate whether a plaintiff has created a fact issue on her statutory claim." *Flores*, 709 S.W.3d at 505. In the first step, the plaintiff must show, among other things, that she suffered an adverse employment action. *Harris Cnty. v. Gokal*, No. 01-23-00391-CV, 2024 WL 5080264, at *4 (Tex. App.—Houston [1st Dist.] Dec. 12, 2024, no pet.).

The parties disagree about whether, in considering whether Lamb's allegation concerns an adverse employment action, we should apply the standard we used in *Elgaghil* or the standard for federal discrimination claims recently set out by the United States Supreme Court in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S. Ct. 967 (2024). As noted above, we stated in *Elgaghil* that Texas's discrimination law was designed to address ultimate employment decisions, such as "decisions to hire, discharge, promote, compensate, or grant leave," and that the law did not address

20

"every action that occurs in the workplace that makes an employee unhappy." 45 S.W.3d at 143. Under the *Elgaghil* standard, we would decide whether the denial of training constituted an "ultimate employment decision"; the County argues that it was not. Under *Muldrow*, on the other hand, an employee need only show "some harm" respecting the terms and conditions of employment to prevail in a suit under federal discrimination law. *See Muldrow*, 601 U.S. at 354–55, 144 S. Ct. at 974. As we explain, we need not decide whether to overrule *Elgaghil* and follow *Muldrow* because even under the *Muldrow* standard, the trial court correctly dismissed Lamb's claim based on the February 2021 CSI course as any act by the County regarding Lamb's attending the course could have had only a de minimis effect, if any, on the terms and conditions of her employment and did not rise to the level of "some harm."

According to Lamb, she did not attend the February 2021 CSI course because, due to a statement from her superior, she believed that the course had been rescheduled for a different day, so she signed up for a different training that conflicted with the February 22–26 CSI training dates. In her EEOC charge and the affidavit attached to her response to the County's plea to the jurisdiction, Lamb alleged that she spoke with her immediate supervisor, Sergeant Stone, about attending the February 22–26 CSI course. Sergeant Stone emailed Sergeant J. Brittain to ask for Lamb to attend that course, but Sergeant Brittain "advised that the course was moved from February to March 8–12" and asked Lamb to submit a request to attend. On February 9, Sergeant Brittain emailed Lamb to confirm that she had been approved to

attend the February 22–26 course. Lamb stated that she "advised S[ergeant] Brittain that [she had] unrelated training for February 22–26 since the course [had] moved. Sergeant Brittain simply offered that there was a miscommunication on the dates." Lamb did not allege that Sergeant Brittain had deliberately provided the wrong date for the CSI course so that Lamb would sign up for different training or that Sergeant Brittan or Sergeant Stone required her to attend the other course instead of the CSI course.

In other words, under Lamb's version of events, when she was told by her superior that she had been registered for the February 22–26 course, she declined to go and chose to attend another course instead. She did not tell us what the other course was, if she was required to participate in that course at that time, or if she would have suffered any negative consequence for attending the CSI course instead of the other course. Nothing in the record provides any reason why Lamb could not have chosen to attend the February CSI training instead of the other course if she had wanted to. The trial court could have concluded that she did not suffer any harm from the County's actions with respect to the February 2021 CSI course because Lamb's own evidence showed that she was enrolled in the CSI course as she requested, and there was no evidence that she could not have attended the course if she had wanted to or that she would have suffered any sort of harm if she did. Thus, regardless of whether we apply *Elgaghil* or *Muldrow*, the trial court did not err by dismissing Lamb's claim that was based on her missing that training. *See Muldrow*,

22

601 U.S. at 354–55, 144 S. Ct. at 974 (stating that for a discrimination claim, plaintiff must show that she suffered a difference in treatment that caused some sort of harm respecting an identifiable term or condition of employment).

Lamb's brief further asserts that she had also asked to attend the March 2021 CSI course but was told that she could not attend "due to manpower." Lamb included this statement in her EEOC charge, but she did not claim that the reason given was untrue or allege any facts about other officers being permitted to attend despite the manpower issue. *See Flores*, 709 S.W.3d at 504–05 (stating that governmental entity's immunity is not waived unless plaintiff alleges facts that would establish that governmental entity violated Chapter 21). Accordingly, Lamb's EEOC charge did not allege facts that would establish that the County violated Chapter 21. Moreover, even if she had included such facts in her EEOC charge, she did not include a claim based on the March 2021 training in her first amended petition. She alleged that she had been denied training "[i]n July, August, September, and October of 2020, and again in February 2021" and did not include any claim for discrimination based on a denial of training in March 2021.

We overrule the part of Lamb's first issue challenging the dismissal of her failure-to-train claims based on the CSI course.

### b. Other courses

Lamb complains in her brief that she had to pay for two separate courses, a Spanish course and a "Child Safety Check List" course, when the courses were

available for free at the County's Academy. However, she did not reference these courses in her first amended petition; her petition mentions "specialized training courses" in July, August, September, and October 2020, but she did not identify what those courses were. Even if these courses included the Spanish and child safety courses,[8] she did not timely file an EEOC charge about any discrimination related to not sending her to courses in those months. Because Lamb did not timely file an administrative complaint as to training courses that occurred in 2020, we overrule the remainder of her issue challenging the dismissal of her claim that the County discriminated against her by not allowing her to attend the Spanish course and child safety course for free.

We have held that the trial court did not err by granting the County's plea and dismissing Lamb's claims, and this holding does not rely on the trial court's sustaining objections to paragraphs in Lamb's affidavit. Accordingly, we need not consider Lamb's remaining issues, which challenge the exclusion of those paragraphs. *See* Tex. R. App. P. 47.1.

---

[8]Her EEOC charge and affidavit mention these courses in the same paragraph that begins with her making a request in September 2020 to attend an October CSI course. This context suggests that the Spanish and child safety courses occurred in September 2020, but Lamb did not specify.

## IV. Conclusion

Having overruled Lamb's first issue, which is dispositive, we affirm the trial court's order.[9]

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: August 21, 2025

---

[9]We do not address whether any of the jurisdictional defects we have identified could have been cured by Lamb's amending her pleadings. After the County filed its plea, Lamb did not amend her petition in response to the County's plea, she did not ask the trial court for an opportunity to amend her pleadings, and she did not request that relief in this court. Accordingly, she has waived the opportunity to amend. *See Delgado v. River Oaks Police Dep't*, No. 02-15-00205-CV, 2016 WL 6900900, at *1 (Tex. App.—Fort Worth Nov. 23, 2016, no pet.) (mem. op.); *see also City of San Antonio v. Bailey*, No. 08-23-00302-CV, 2024 WL 4849351, at *7 (Tex. App.—El Paso Nov. 20, 2024, no pet.) (citing *Kassen v. Hatley*, 887 S.W.2d 4, 13 n.10 (Tex. 1994)); *Robinson v. Alief I.S.D.*, 298 S.W.3d 321, 328 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).